John D. **MARRIE**, et al., Plaintiffs,

v.

Marvin L. **NICKELS**, et al., Defendants.

No. 97–3280–JTM.

United States District Court, D. Kansas.

Sept. 30, 1999.

Order Nunc Pro Tunc, Oct. 18, 1999.

---

John D. Marrie, Lexington, KY, pro se.

Michael R. Johnson, Lexington, KY, pro se.

John M. Ricks, Sandstone, MN, pro se.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for defendants.

## ORDER

MARTEN, District Judge.

John D. Marrie, John M. Ricks, and Michael R. Johnson are three military prisoners who claim the various defendants have violated their First, Fifth and Eighth Amendment rights under the Constitution through a variety of actions. Plaintiffs appear pro se in this action, and they have sued the defendants in their official and individual capacities. Plaintiffs seek three forms of relief: (1) "administrative sentence credit" toward the expiration of their sentences; (2) injunctive and mandamus relief; and (3) monetary relief in the form of compensatory and punitive damages.

Three motions are currently pending before the court: (1) the defendants' Rule 12(b)(6) motion to dismiss; (2) the plaintiffs' motion to serve process on the defendants; and (3) the plaintiffs' motion to impose Rule 11 sanctions. The court has considered the parties' submissions and is prepared to rule. For the reasons stated below, the defendants' motion to dismiss is denied in part and granted in part; the plaintiffs' motion to serve process is denied as moot; and the plaintiffs' motion for sanctions will be ruled upon at a later date consistent with this order.

## I. Facts

At the time this lawsuit was filed, the plaintiffs were being held at the United States Disciplinary Barracks ("USDB") in Fort Leavenworth, Kansas. Marrie had been incarcerated at the USDB since 1992 and was serving a sentence of twenty years. Johnson had also been incarcerated at the USDB since 1992, but he was serving a sentence of thirty-five years. Ricks had been confined at the USDB since 1993 and was serving a fifteen-year sentence. While this lawsuit was pending, the three defendants were transferred to the custody of the United States Bureau of Prisons. Thereafter, Marrie was moved to Lexington, Kentucky; Ricks was transferred to Sandstone, Minnesota; and Johnson was relocated to Pekin, Illinois.

The plaintiffs' complaint alleges numerous wrongful acts by the defendants. Their primary complaints concern the conditions at the USDB. Specifically, they claim that (1) ventilation in their individual cells is non-existent and they are prevented from having fans in their cells; (2) they are locked down in their cells for an average of 9½ hours per day, at least 2½ hours of that time being the hottest part of the day during the summer months; (3) many of the cells and common areas are coated with lead-based paint and they are being exposed to lead on a continuous basis; (4) the food preparation, storage, dining, and dishwashing areas are infested with ver-

min; (5) they are forced to consume their meals in a crowded, noisy dining area and permitted a maximum of twenty minutes to consume their meals; (6) inmates who are known to be explosive and unpredictably violent are intentionally housed with inmates known to be non-violent; (7) inmates who are known to be TB and HIV positive are housed in direct proximity to the plaintiffs in the general population and are permitted to work in direct contact with the food in the dining facility; (8) they are required to submit to military haircuts every two weeks; (9) they are frequently subjected to scrutiny while performing private bodily functions, showering, and changing clothes; (10) during the midmorning and evening counts, they are required to abase themselves to the guards; (11) during formal proceedings, they are required to stand at attention and render formal miliary courtesies with attendant military "Report," even though they are discharged from the military and considered by law to be civilians; (12) the defendants enact new or newly interpreted rules and conflicting guidelines on a "nearly daily basis;" (13) plaintiffs are prohibited from refusing non-life-saving medical treatment or to take prescribed medication, even if known to be harmful due to allergies or a dangerous mixture with other medications; (14) medications are dispensed by unqualified and untrained personnel; (15) not all rules for which they may be disciplined are enumerated in the Manual for the Guidance of Inmates (MGI); (16) the mattresses they are forced to utilize are not cleaned or sterilized between users; (17) their domiciles do not have any smoke or fire detection equipment; (18) the defendants have implemented a "crack down" in response to litigation filed by plaintiffs and other inmates; (19) plaintiffs and other inmates are routinely used as props for guard force training; (20) body alarm and whistle alarm drills are often conducted in the domiciles between 10:00 p.m. and 5:00 a.m., causing sleep deprivation; (21) many new guards are routinely "formed up to create a shakedown gauntlet wherein inmates are frisk searched dozens of times in a mere 150 feet between the Castle and Pope Hall," which causes the plaintiffs to suffer "uncountable assaults;" and (22) plaintiffs are compelled to use USDB phones at high rates to call friends and family, and they are not permitted to utilize alternative long distance services.

Plaintiffs also allege the defendants have violated their Fifth Amendment rights. First, they claim that in order to be seriously considered for a custody elevation, for restoration of any forfeited good conduct time, or for parole or clemency, they must "in effect, retract their steadfastly maintained 'Not Guilty' pleas, and 'accept responsibility for confining offense(s).'" Amended Compl. ¶¶ 52–54. Second, they claim they are required to be informants, not only against other inmates, but against themselves as well, and they are subject to disciplinary action for their failure to do so. Third, they claim they may be punished for conduct for which they have no adequate notice.

Plaintiffs also allege the defendants have violated their First Amendment rights. First, they claim the defendants have implemented a "crack down" in response to litigation filed by them and other inmates, which they contend punishes them for exercising their First Amendment rights to redress grievances and access to the courts. Second, they claim they are prohibited from making any complaint or grievance which may "anger or irritate" a staff member, id. ¶ 81, which also violates their right to redress grievances. Third, they claim that one of the authorized punishments for any misconduct is DTP Bibliotherapy, which, according to the plaintiffs, causes them to live in fear that their First Amendment rights to the free exercise of religion may be violated. Fourth, they allege they are prohibited from having any contact with the media unless they obtain advance permission and all material is submitted for review and censorship. Fifth, they claim their privileged mail is

subject to inspection and being "thoroughly screened," which they claim violates their rights to unhindered access to the courts and abrogates their attorney/client privilege.

Ricks and Marrie both claim they have been the victims of sexual assault. On November 8, 1997, Ricks claims a guard sexually assaulted him during a "routine" frisk search as he was leaving the dining facility. The guard allegedly placed his hands into Ricks's pants, caressed his buttocks, and stroked his genitalia. According to Ricks, the guard who assaulted him is well known for committing such assaults. Ricks attempted to redress his grievance, but according to him, his complaint was summarily rejected.

On January 13, 1998, Ricks claims he was again sexually assaulted by another guard during a frisk search as he was leaving the dining facility. The guard allegedly caressed his lower stomach, caressed his buttocks, and struck him in the genitals with sufficient force to cause him several hours of pain. Ricks claims the defendants completely ignored his attempt to report and redress his grievance.

On January 24, 1998, Marrie claims he was sexually assaulted by a guard during a frisk search as he was exiting the dining hall. He contends that his attempt to redress his grievance was also met with indifference.

According to the plaintiffs, the dining facility is equipped with metal detectors and hand-held "Garrett" wands, which precludes the necessity of pat frisk searches. However, the plaintiffs claim the defendants "routinely circumvent the equipment and procedures ... in order to facilitate abusive treatment." *Id.* ¶ 112.

Certain claims in the plaintiffs' complaint relate only to Ricks. On February 14, 1997, Ricks claims a prison official confiscated a page of notes from him that were located on his desk in the law library. Later that evening, a prison official interrogated him about the notes. During the interrogation, Ricks claims he told the official that the notes were a "work product for a privileged correspondence with the United States Attorney General." *Id.* ¶ 116. Ricks claims that, with the exception of two questions concerning where the notes were found, the interrogation focused primarily on the contents of the notes and their intended purpose. After the interrogation, Ricks was placed in 4–Base Maximum Custody. The next day Ricks was informed that he was being charged with "Unauthorized Writing." On February 21, 1997, Investigator Doyle interviewed Ricks concerning the charge. Doyle claimed that the basis of the charge was not the contents of the notes, but where they had been left.

Ricks was housed in Maximum Custody Punitive isolation until the afternoon of February 25, 1997.[1] He claims he should have been placed in 6–Base, Administrative Segregation—Pending Investigation, not the 4–Base Maximum Custody. He alleges the defendants deliberately placed him in 4–Base to "teach him a lesson." *Id.* ¶ 130. Ricks claims that a prison official who worked in the library told two other inmates that the treatment imposed upon Ricks was designed to send a message to other inmates, because the defendants were worried that others might "jump on the bandwagon and start seeking Grand Jury investigations into alleged illegal conduct by prison staff." *Id.* ¶ 157. Ricks contends this same official later confirmed to him that he had made this comment and

---

1. While Ricks was in maximum custody, the defendants removed him from his detail as law clerk and placed him on unemployed status. Ricks claims this was a violation of the defendants' own regulations. Ricks alleges that the effect of removing him as law clerk is to extend his release date by 83 days. He also contends that removing him as law clerk resulted in his punitive lockdown for an additional 9½ hours every day—Monday through Friday. Ricks claims that other inmates who were charged with "Unauthorized Writing" were not removed from their work assignments.

that it accurately reflected what the "higher ups" had told him. *Id.*

On the afternoon of February 25, 1997, the defendants returned Ricks to the general population and assigned him to cell 446 in 4–Wing, which is located on the left side of the domicile, directly above the open-bay showers and in front of a heating vent. According to Ricks, the left side of 4–Wing is in the "territory" of the more aggressive and racially motivated inmates. *Id.* ¶ 133. On February 25, 1997, Ricks submitted two complaints explaining his health problems (chronic sinusitis and hyper-sensitivity to loud noise) and the impact of being placed on the left side, which is noticeably hotter, more humid and far noisier than the right side. According to Ricks, both complaints were met with deliberate indifference. Ricks claims he has experienced difficulties sleeping in his cell and he has made numerous requests to be transferred to the right side of 4–Wing.

## II. Motion to Dismiss

### A. Standards

■ In ruling on a motion to dismiss, the court must accept all the well-pleaded factual allegations of the complaint as true and must view them in the light most favorable to the non-moving party. *Sutton v. Utah State Sch. for the Deaf and Blind,* 173 F.3d 1226 (10th Cir.1999). In accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *Ordinance 59 Ass'n v. United States Dep't of Interior Secretary,* 163 F.3d 1150, 1152 (10th Cir.1998). A 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Maez v. Mountain States Tel. and Tel.,*

*Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)). "Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." *Van Deelen v. City of Eudora, Kan.,* 53 F.Supp.2d 1223, 1227 (D.Kan.1999) (citing *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989)).

■ The court construes a pro se plaintiff's complaint liberally and judges it against a less stringent standard than that used for pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Tenth Circuit has interpreted this rule as follows:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.

*Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991) (footnote omitted).

### B. Plaintiffs' Claims for Injunctive and Mandamus Relief

Plaintiffs seek "[i]njunctive relief barring further acts of sexual assault and retaliation" against them. Amended Compl. ¶ B. And, they seek "[m]andamus relief ordering defendants to correct the multitudinous unconstitutional provisions of the MGI as well as daily practices by prison staff." *Id.* ¶ C. The defendants argue that the plaintiffs' claims for injunctive and mandamus relief are moot because they have been transferred from the USDB to the Federal Bureau of Prisons

and are, therefore, no longer within their custody and control. In addition, the defendants contend that the possibility of the alleged violations recurring are remote since the plaintiffs are no longer incarcerated at the USDB. Plaintiffs argue that their claims are not moot because they remain subject to recall to military confinement.[2]

"A case becomes moot when events occur which resolve the controversy underlying it." *United States v. Dominguez–Carmona*, 166 F.3d 1052, 1055 (10th Cir.1999) (citing *Burke v. Barnes*, 479 U.S. 361, 363, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987)). "In such a situation, a federal court decision provides no resolution between the parties to the lawsuit and therefore, constitutes a constitutionally impermissible advisory opinion." *Id.* In other words, "when a favorable decision will not afford plaintiff relief, and plaintiff's case is not capable of repetition yet evading review, [the court has] no jurisdiction under Article III." *McAlpine v. Thompson*, 187 F.3d 1213, 1999 WL 606708 (10th Cir. Aug.12, 1999).

Generally, an inmate's transfer to another prison or release moots his request for declaratory or injunctive relief. *See, e.g., id.* (prisoner's claim for mandamus relief moot once he was placed on supervised release); *Smith v. Younger*, 1999 WL 623355, at *2 (6th Cir. Aug.9, 1999) (unpublished opinion) ("A transfer to another prison moots a prisoner's request for declaratory or injunctive relief."); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (prisoner's transfer moots his request for injunctive relief against conditions of confinement in facility from which he was transferred); *Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir.1986) (prisoner's transfer from prison where he complained of the conditions of confinement mooted his claims for declaratory and injunctive relief); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir.1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir.1984) (prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail").

Because the plaintiffs have all been transferred from the USDB, the court finds that their claims for injunctive and mandamus relief are moot. The court is not persuaded by the plaintiffs' argument that they are subject to recall to military confinement. In *McAlpine*, the Tenth Circuit recently held that

> when an inmate's claims for prospective injunctive relief regarding conditions of confinement becomes moot due to the inmate-plaintiff's release from confinement, the inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow "capable of repetition, yet evading review" exception to the mootness doctrine.

*McAlpine*, 187 F.3d 1213. The Tenth Circuit's decision in *McAlpine* directs this court to find that the plaintiffs' claim that they may be recalled to the military prison is too remote to overcome the mootness doctrine.

### C. Plaintiffs' Claims for Administrative Sentence Credit

Plaintiffs seek an administrative sentence credit of five days for each day spent in the "barbaric and unconstitutional conditions imposed by the defendants." Amended Compl. ¶ A. Ricks seeks ten days administrative sentence credit for each day spent in "retaliatory punitive isolation for the exercise of First Amendment

---

2. Plaintiffs claim they have heard this happened at least once to someone named A. Ricks (no relation to plaintiff Ricks).

rights." *Id.* ¶ G. Ricks further requests two days administrative sentence credit for each day spent in cell 446 in "retaliation for the exercise of First Amendment rights." *Id.* ¶ H. The defendants argue this type of relief can only be sought in a habeas corpus proceeding. The court agrees with the defendants' position.

When a prisoner seeks "equitable relief that will result in immediate or more speedy release, then habeas is the exclusive federal remedy." *Monk v. Secretary of the Navy,* 793 F.2d 364, 367–68 (D.C.Cir.1986) ("[W]hen a prisoner challenges action other than his underlying conviction, the nature of the relief requested determines whether habeas corpus is the exclusive federal remedy."); *see also Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (finding that a complaint seeking to alter the "fact or duration" of a prisoner's confinement can only be granted through a habeas corpus proceeding).

Because the plaintiffs are in effect seeking to alter the duration of their imprisonment, the appropriate avenue is a habeas corpus proceeding. As such, and taking no position on the merits, the court denies administrative sentence credit in this proceeding.[3]

### D. Ricks's and Marrie's Claims for Monetary Damages

Ricks and Marrie seek monetary damages in the form of compensatory and punitive damages for the alleged sexual assaults. Amended Compl. ¶¶ D–E. Ricks also seeks compensatory and punitive damages for the defendants' alleged retaliation. *Id.* ¶¶ F–I. The defendants have set forth numerous defenses to Ricks's and Marrie's claims for monetary damages. The court addresses each below.

### 1. Sovereign Immunity

The defendants argue that a suit against them in their official capacities is, in essence, a suit against the United States requiring a waiver of sovereign immunity. The defendants are correct on this point. "When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States." *Atkinson v. O'Neill,* 867 F.2d 589, 590 (10th Cir.1989). Plaintiffs have essentially sued the United States, even though the United States was not actually named as a party. *Id.* "It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived." *Id.* (citing *Kentucky v. Graham,* 473 U.S. 159, 165–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)); *see also National Commodity & Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1245–46 (10th Cir.1989) ("It is well-settled that the United States retains its sovereign immunity from suit unless it has expressly waived such immunity and that the application of this doctrine cannot be avoided simply by naming agencies of the federal government or their individual officers and employees"). The United States has not waived sovereign immunity under circumstances such as those alleged by the plaintiffs. Therefore, the plaintiffs' action for damages against the defendants in their official capacities is barred by the doctrine of sovereign immunity. *Atkinson,* 867 F.2d at 590.

Although a suit for damages against federal employees in their official capacities would be barred by sovereign immunity, a suit for damages against those same employees in their individual capacities acting under color of federal authority would not be barred. *Pleasant v. Lovell,*

---

**3.** It appears the plaintiffs seek only injunctive and mandamus relief and administrative sentence credit for their claims regarding the conditions of their confinement. As such, those claims are dismissed for the reasons stated above. Because Johnson has not advanced any other claims, his case against the defendants is dismissed.

876 F.2d 787, 793–94 (10th Cir.1989) (citing *Davis v. Passman,* 442 U.S. 228, 245–48, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) and *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 395–97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). "In *Bivens,* the Court held that liability may attach when a federal official acting under color of authority engages in unconstitutional conduct and is then held to account for that conduct in his individual capacity." *Pleasant,* 876 F.2d at 794; *see also Chapoose v. Hodel,* 831 F.2d 931, 935 (10th Cir.1987) ("A *Bivens* action seeks to impose personal liability and damages on a federal official for the violation of a constitutional right.").

### 2. Personal Service

 The defendants claim they have not been properly served in their individual capacities. However, this court, through Judge Van Bebber, has previously rejected the defendants' argument regarding service in their individual capacities:

> The record reflects the waiver of summons forms sent to defendants were not executed, however each defendant has been served with summons and the original complaint. *The court thus rejects defendants' assertion that they have not yet been served in their individual capacities in this case.* Because no new defendants are named in the amended pleading, plaintiffs' amended complaint is to be served on counsel for defendants.

Order of Sept. 25, 1998, at 2 (emphasis added). Therefore, the court finds this argument lacks merit.

### 3. The *Feres* Doctrine

 The defendants claim that the *Feres* doctrine bars monetary relief. "The Supreme Court, in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), and its progeny, has created a judicial exception to governmental liability for certain damage actions brought by military service members for injuries sustained while on active duty status." *Walden v.*

*Bartlett,* 840 F.2d 771, 773 (10th Cir.1988). In *Feres,* the Court held that the Federal Tort Claims Act ("FTCA") did not permit service members to maintain lawsuits against the Government for injuries that "arise out of or are in the course of activity incident to service." *Feres,* 340 U.S. at 146, 71 S.Ct. 153. The Supreme Court later relied on *Feres* to bar a *Bivens* action for damages brought by servicemen against their superior officers for constitutional violations. *See Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In *Chappell,* the Court held that "the unique disciplinary structure of the military establishment and Congress' activity in the field constitute 'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Id.* at 304, 103 S.Ct. 2362. The Tenth Circuit has noted the three rationales underlying the *Feres* doctrine: " '(1) the distinctly federal nature of the relationship between the government and members of its armed forces . . .; (2) the availability of alternative compensation systems; and (3) the fear of damaging the military disciplinary structure.' " *Walden,* 840 F.2d at 773 (citation omitted). "Although *Feres* and its progeny do not address service members' damage claims based on federal question jurisdiction, those cases suggest such claims are similarly barred by the *Feres* doctrine." *Id.* "The *Feres* rationales extend beyond a damage action based on FTCA and *Bivens* and require abstention in a damage action arising from the Constitution if the *Feres* 'incident to service' test is met." *Id.*

In *Walden,* the plaintiff was a military prisoner who alleged that the defendants, three individual military officers, violated his rights to due process by the manner in which they conducted disciplinary proceedings against him. *Id.* at 772. The actions about which the plaintiff complained occurred after the plaintiff's military court-martial but *before* his discharge was officially executed. *Id.* at 774. The Tenth

Circuit found that the challenged disciplinary proceedings were "incident to service" within the meaning of *Feres:*

> At the time of challenged proceedings, Walden was an active-duty service member. assigned to a military institution commanded and operated by military personnel according to military policies and regulations. He remained subject to the Uniform Code of Military Justice and could be tried by court-martial for offenses while incarcerated at the USDB. 10 U.S.C. § 802(a)(7). Walden's incarceration at the USDB is uniquely part of this military relationship such that it is "incident" to his military service as established by *Feres.* Walden's damage claim against appellees, therefore, falls within the ambit of the *Feres* doctrine. Accordingly, Walden is barred from bringing this damage action against military officials.

*Id.*

Other decisions from this district have also found that the *Feres* doctrine bars a military prisoner's claim for damages, but they, like *Walden,* all involve alleged acts that occurred prior to the prisoner's official discharge. *See, e.g., Evans v. Caldera,* 1999 WL 233307, at *4 (D.Kan. Mar.11, 1999) (challenged acts occurred after the military court-martial but before the prisoner's discharge was officially executed); *Sargent v. United States,* 897 F.Supp. 524, 526 (D.Kan.1995)(same). The key in all of these cases is that the alleged unlawful acts occurred prior to the prisoner's official discharge.

 The plaintiffs in this case claim they have been discharged from the military, but they do not indicate when their discharges occurred. Therefore, the court is unable at this time to determine whether the *Feres* doctrine bars the plaintiffs' claims. If the alleged acts occurred after their discharges, the *Feres* doctrine will not bar their claims.[4] *See, e.g., M.M.H. v. United States,* 966 F.2d 285, 288, 289 n. 2 (7th Cir.1992) (*Feres* "does not bar suit based on 'a new and independent tort after discharge.' 'If the plaintiff is a civilian when the negligence occurs, immunity serves no valid purpose.'") (citations omitted); *Milliken v. United States,* 439 F.Supp. 290, 294–95 (D.Kan.1976) (concluding that the *Feres* doctrine did not bar prisoner's claim under the FTCA because at the time of the tortious acts alleged in the complaint he had been given a bad conduct discharge revoking all military privileges, he was receiving no pay or other form of compensation from the military, and was not performing any military tasks).

### 4. 42 U.S.C. § 1997e(e)

The plaintiffs' action is subject to the Prison Litigation Reform Act ("PLRA"), which provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The defendants argue that the plaintiffs have failed to allege or make a showing of any physical injury in connection with their many claims of psychological stress.

The precise scope of § 1997e(e) is not entirely clear. Many courts have held that § 1997e(e) does not necessarily bar an inmate's right to vindicate certain types of constitutional claims. *See, e.g., Canell v. Lightner,* 143 F.3d 1210, 1213 (9th Cir. 1998) (stating that § 1997e(e) is not applicable to First Amendment claims); *Amaker v. Haponik,* 1999 WL 76798, at *7 (S.D.N.Y. Feb.17, 1999) (holding that § 1997e(e) did not bar plaintiff's First Amendment claims); *Mason v. Schriro,* 45

---

**4.** The defendants cite *West v. Nickels,* No. 96–3453–GTV, slip op. at 1–2 (D.Kan. Mar. 18, 1997) in support of their argument that the plaintiffs' claims are barred by the *Feres* doctrine. That case does not shed any light on the issue because it does not state whether the alleged acts occurred before or after the prisoner's discharge. It just summarily dismisses the prisoner's claims based on the *Feres* doctrine.

F.Supp.2d 709, 720 (W.D.Mo.1999) (finding that § 1997e(e) does not apply to Fourteenth Amendment equal protection claims); *Lewis v. Sheahan*, 35 F.Supp.2d 633, 637 n. 3 (N.D.Ill.1999) (stating that § 1997e(e) does not bar plaintiff's right of access claims); *Self–Allah v. Annucci*, 1998 WL 912008, at *5 (W.D.N.Y. Oct.14, 1998) (holding that § 1997e(e) is not applicable to plaintiff's First Amendment claims because the statutory section applies to situations where the underlying claim involves an injury to a prisoner's physical well-being); *Friedland v. Fauver*, 6 F.Supp.2d 292 (D.N.J.1998) (stating that § 1997e(e) did not bar plaintiff's claim for unconstitutional incarceration following arrest without probable cause); *Warburton v. Underwood*, 2 F.Supp.2d 306, 315 (W.D.N.Y.1998) (declining to dismiss Establishment Clause claim under § 1997e(e)); *Barnes v. Ramos*, 1996 WL 599637, at *2 (N.D.Ill. Oct.11, 1996) (finding that § 1997e(e) is inapplicable to plaintiff's claims for violations of his constitutional rights).

Other courts have applied § 1997e(e) in a variety of contexts to bar claims for relief. *See, e.g., Singleton v. Alameda County Sheriff's Dept.*, 1998 WL 754593 (N.D.Cal. Oct.26, 1998) (deliberate infliction of psychological harm claim); *Flannery v. Wagner*, 1998 WL 709762 (D.Kan. Aug.10, 1998) (claim of deliberate indifference to safety and welfare of inmate); *Warcloud v. Horn*, 1998 WL 255578 (E.D.Pa. May 20, 1998) (First Amendment free exercise claim, Fourteenth Amendment equal protection and other claims); *Walker v. Hubbard*, 1998 WL 205130 (N.D.Cal. Apr.22, 1998) (claim of deliberate indifference to safety and welfare of inmate); *Dawes v. Walker*, 1998 WL 59454 (N.D.N.Y. Feb.9, 1998) (section 1997e(e) applied to preclude plaintiff from pursuing compensatory damages for his retaliation claim and his claim that he was exposed to danger of physical harm); and *Brown v. Sommers*, 1997 WL 873828 (N.D.Ind. Mar.20, 1997) (section 1997e(e) independent ground for dismissing retaliation, due process and equal protection claims).

"A review of cases from other courts indicates that the statutory section is most frequently applied where plaintiff alleges that defendants' actions have caused him to fear physical injury and fear for his safety and welfare, but he fails to show any physical injury." *Mason*, 45 F.Supp.2d at 716 (citing *Hill v. Plummer*, 1998 WL 305517 (N.D.Cal.1998) (fear of shock from electronic restraining device); *Singleton*, 1998 WL 754593 (deliberate infliction of psychological harm); *Luong v. Hatt*, 979 F.Supp. 481 (N.D.Tex.1997) (failure to protect from assault by other inmates); *Flannery*, 1998 WL 709762 (deliberate indifference to safety and welfare of inmate); and *Zehner v. Trigg*, 952 F.Supp. 1318 (S.D.Ind.1997) (infliction of emotional injury as a result of exposure to asbestos)).

The Tenth Circuit recently addressed § 1997e(e)'s applicability. *See Perkins v. Kansas Dep't of Corrections*, 165 F.3d 803 (10th Cir.1999). It found that "a claim for compensatory damages would clearly be barred in the absence of any showing of physical injury." *Id.* at 808 n. 6. However, it did not dismiss the notion that nominal and punitive damages may not be barred by the statute:

[I]t is not clear that a claim for either punitive or nominal damages would also be barred. Nominal damages, for instance, are available for the violation of certain "absolute" constitutional rights, such as due process, without any showing of actual injury. *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Thus, one could argue that a claim for nominal damages arising from a due process violation such as that alleged here is not actually an action "for mental or emotional injury" that would be subject to the limitations of § 1997e(e). *See Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C.Cir. 1998) (noting possibility that § 1997e(e) would not apply to claim for nominal damages); *Wright v. Miller*, 973

F.Supp. 390, 396 (S.D.N.Y.1997) (noting that § 1997e(e) would bar plaintiffs from recovering any damages other than nominal ones for alleged due process violations that caused only mental injury).

*Id.*

 Ricks seeks compensatory and punitive damages for the defendants' alleged retaliation.[5] It appears the damages he seeks are for emotional distress only. He does not allege he suffered any physical injury as a result of the defendants' retaliation. Therefore, under *Perkins,* Ricks's claim for compensatory damages is barred by § 1997e(e). He may, however, be entitled to nominal and punitive damages.

 Ricks and Marrie also seek compensatory and punitive damages for their sexual assault claims. Section 1997e(e) does not define "physical injury." The Fifth Circuit has relied on the Eighth Amendment's standards for determining whether a prisoner has suffered the requisite "physical injury":

> [T]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

> In the absence of any definition of "physical injury" in the new statute, we hold that the well established Eighth Amendment standards guide our analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering. That is, the injury must be more than *de minimus,* but need not be significant.

*Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997) (citations omitted) (quoting *Hudson v. McMillian,* 503 U.S. 1, 10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The Eighth Amendment prohibits the unnecessary and wanton infliction of pain by a prison official. *Escobar v. Zavaras,* 149 F.3d 1190 (table), 1998 WL 314303, at *3 (10th Cir. June 2, 1998) (unpublished opinion) (citing *Whitley v. Albers,* 475 U.S. 312, 319–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). "Significant injury is not required." *Escobar,* 1998 WL 314303, at *3 (citing numerous cases, including *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir.1992) (significant physical injury not required because constitutional inquiry focuses on whether there was infliction of pain that was unnecessary and wanton)).

 The Tenth Circuit has not addressed whether allegations of a sexual assault satisfy the "physical injury" required by § 1997e(e). However, the Second Circuit recently considered the issue and decided that such allegations, if proved, would constitute "physical injury." *See Liner v. Goord,* 1999 WL 734693, at *4 (2d Cir. Sept.22, 1999) (noting that § 1997e(e) does not define physical injury; however, "accepting the allegations in the complaint, the alleged sexual assaults qualify as physical injuries as a matter of common sense. Certainly, the alleged sexual assaults would constitute more than de minimis injury if they occurred"). The court is persuaded by the Second Circuit's reasoning and finds that sexual assaults would qualify as physical injuries under § 1997e(e). Viewing the plaintiffs' factual allegations in the light most favorable to them, Ricks's and Marrie's sexual assault claims survive defendants' motion to dismiss.

---

**5.** "Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir.1990). "Retaliation against an inmate for exercising his right to access the courts violates both the inmate's First Amendment rights and right to court access." *Moore v. Moore,* 1992 WL 219056, at *2 (10th Cir. Sept.11, 1992) (unpublished opinion) (citing *Smith,* 899 F.2d at 947–48). A showing of retaliation may permit a prisoner to recover nominal damages. *Id.*

### 5. 42 U.S.C. § 1997e(a)

The defendants argue that the plaintiffs' claims are barred because they failed to exhaust their administrative remedies as required by the PLRA, which states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The defendants concede that Ricks and Marrie have exhausted their administrative remedies for their sexual assault claims.[6] Def.Br. at 9. It is not clear from the parties' submissions whether Ricks attempted to exhaust his administrative remedies with regard to his retaliation claim.

Various district and appellate courts hold that if a prison's grievance system does not provide for the administrative award of monetary relief, the grievance system is not "available" to a prisoner. *See, e.g., Hollimon v. DeTella,* 6 F.Supp.2d 968, 970 (N.D.Ill.1998); *Lacey v.C.S.P. Solano Med. Staff,* 990 F.Supp. 1199, 1202 (E.D.Cal.1997); *Polite v. Barbarin,* 1998 WL 146687, at *2 (S.D.N.Y. Mar.25, 1998); *see also Lunsford v. Jumao–As,* 155 F.3d 1178 (9th Cir.1998) (holding that *Bivens* plaintiff was not required to exhaust administrative remedies where administrative remedy program provided only for injunctive relief). In *Garrett v. Hawk,* 127 F.3d 1263, 1266–67 (10th Cir.1997), the Tenth Circuit held that a *Bivens* plaintiff did not have to exhaust administrative remedies where, under applicable procedures, a federal inmate's complaint seeking purely monetary damages is rejected as improper for administrative review.

Currently, the court does not possess information regarding the USDB's administrative grievance procedures. Therefore,

it lacks the ability to determine whether the USDB allows monetary awards for inmates who have been the victims of retaliation. As such, Ricks's claim for retaliation survives.

### 6. Respondeat Superior

The defendants have raised respondeat superior· as a defense to the plaintiffs' claims. To the court's knowledge, plaintiffs have not premised any of their claims on the doctrine of respondeat superior. Therefore, the court does not understand the defendants' argument.

### E. Motion to Dismiss Summary

Pursuant to Fed.R.Civ.P. 12(b)(6) and in accordance with the analysis set forth above, the following claims are dismissed for failure to state a claim: (1) the plaintiffs' claims for injunctive and mandamus relief; (2) the plaintiffs' claims for administrative sentence credit; and (3) Ricks's claim for compensatory damages with regard to his retaliation claim. The following claims survive: (1) Ricks's retaliation claim for which he seeks punitive damages; and (2) Ricks's and Marrie's sexual assault claims for which they seek compensatory and punitive damages.

### III. Motion to Serve Process

After the defendants filed their motion to dismiss, which cited the plaintiffs' failure to serve the defendants in their individual capacities as a defense, the plaintiffs filed a motion to serve process upon the defendants in their individual capacities. Based on Judge Van Bebber's prior ruling stating the defendants had been served in their individual capacities, the defense is without merit. Because there is no need to serve the defendants in their individual

---

**6.** One district court has held that prisoners may not have to exhaust their administrative remedies if they are complaining they have been the victims of assault. *See Rodriguez v. Berbary,* 992 F.Supp. 592, 593 (W.D.N.Y. 1998) (finding that the prisoner was not re-

quired to exhaust administrative remedies because "assault claims are not claims that challenge the conditions of a prisoner's confinement.") (citing *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

capacities, the plaintiffs' motion to serve process is denied as moot.

## IV. Motion for Rule 11 Sanctions

Plaintiffs have moved, pursuant to Fed. R.Civ.P. 11(c)(1)(A), for sanctions against the defendants for violating Rule 11(b)(1) and (b)(2). They seek to have the defendants' motion to dismiss stricken and for the court to grant them default judgment.

Rule 11 states, in relevant part:

(b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

. . . .

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed.R.Civ.P. 11(b)(1), (2) and (c).

 "An attorney's actions must be objectively reasonable to withstand sanctions under Rule 11." *Jayhawk Investments, L.P. v. Jet USA Airlines, Inc.,* 1999 WL 588195, at *1 (D.Kan. June 8, 1999) (citation omitted). The standard is objectively reasonable under the circumstances. *Wes-*

*ley v. Don Stein Buick, Inc.,* 184 F.R.D. 376, 378 (D.Kan.1998).

On September 25, 1998, Judge Van Bebber rejected the individual defendants' claims that they had not been properly served. He granted them thirty additional days to respond to the plaintiffs' amended complaint. The defendants' counsel thereafter requested, and received, two additional extensions of time (totaling 100 days) to obtain representation authority from the defendants in their individual capacities. Instead of responding to the complaint or seeking an additional extension of time, defense counsel filed the motion to dismiss, challenging service of process for the individual defendants.

Defense counsel claims that when the court ruled on the plaintiffs' motion to amend their complaint in September 1998, no representation authority had been sought for the defendants in their individual capacities and counsel began to initiate that process. That was the basis for her October 29, 1998 motion for an extension of time. Counsel's second motion indicates authority had not yet been received. In February, when counsel decided representation authority would not be approved anytime soon, she filed a motion to dismiss on behalf of the defendants in their official capacities only. Defense counsel claims she filed the motion to dismiss for three reasons: (1) it was unclear when representation authority would be approved; (2) since the defendants had not been served in their individual capacities, representation authority may have been premature; and (3) she believed that a ruling on the dispositive motion would dispose of the entire case, obviating the need for representation authority.

Plaintiffs claim defense counsel cited perjurious grounds in support of her motions for an extension of time. In other words, because defense counsel now states the individual defendants have not been properly served, the plaintiffs contend she could not have been seeking representa-

tion authority as she claimed in her motions for an extension of time.

Defense counsel argues that because the plaintiffs did not object to the extensions, they have waived their undue delay arguments. In addition, she claims the plaintiffs have not been prejudiced by the extensions because they had already been transferred from the USDB by the time the extensions were granted.

■ The court must address certain issues before it will decide the motion for sanctions. First, plaintiffs must demonstrate that they complied with Rule 11(c)(1)(A), *i.e.*, that they (1) served the motion for sanctions on the opposing party; and (2) waited 21 days before filing the motion with the court for the opposing party to withdraw the challenged conduct. Courts have declined to entertain a motion for sanctions when a party fails to comply with Rule 11(c)(1)(A). *See Wesley v. Don Stein Buick, Inc.*, 1998 WL 709600, at *2 (D.Kan. Sept.25, 1998); *Mike v. Dymon, Inc.*, 1996 WL 427761, at *5 (D.Kan. July 25, 1996). Thus, plaintiffs shall certify to the court that they complied with Rule 11(c)(1)(A) **on or before October 15, 1999.**

If the plaintiffs demonstrate they have complied with Rule 11(c)(1)(A), then the court must allow defense counsel a reasonable opportunity to be heard on the plaintiffs' motion for sanctions. The defendants will be required to show cause for why they raised the service of process defense when Judge Van Bebber clearly rejected this argument in his September 25, 1998 order. The court will set a deadline for the defendants' response, if necessary, once the plaintiffs have complied with the court's order.

IT IS THEREFORE ORDERED this 30th day of September 1999, that the defendants' motion to dismiss (dkt. no. 49) is granted in part and denied in part as set forth above; that the plaintiffs' motion to serve process (dkt. no. 52) is denied as moot; and that the plaintiffs' motion for

sanctions (dkt. no. 53) will be ruled upon at a later date.