JOHN B. WALKER, Airman Apprentice, U. S. Navy, Petitioner

v

COMMANDING OFFICER, Naval Correctional Center,
Camp Allen, Norfolk, Virginia
and
UNITED STATES, Respondents

19 USCMA 247, 41 CMR 247

Miscellaneous Docket
No. 69–45

February 27, 1970

 

*Henry Kowalchick, Esquire,* argued the cause for Petitioner. With him on the brief was *Richard N. Little, Jr., Esquire.*

*Lieutenant Colonel Charles J. Keever,* USMC, argued the cause for Respondents. With him on the brief was *Commander Richard L. Fruchterman, Jr.,* JAGC, USN.

## Opinion of the Court

DARDEN, Judge:

A special court-martial aboard the U. S. S. YORKTOWN convicted the petitioner of assault upon another sailor and disrespect toward a superior petty officer. The court sentenced him to a bad-conduct discharge, confinement at hard labor for four months, forfeiture of $90.00 per month for four months, and a reduction to pay grade E–1. The date of the trial was August 26, 1969. On that same date his counsel filed a

248

"Motion to Hold Execution of Sentence" with the convening authority. The basis for this motion was "[s]ubstantial legal questions were raised which merit the serious consideration of the reviewing officers and the appellate review board. If sentence is commenced, Mr. Walker might be seriously prejudiced in that a major part of the sentence would be executed by the time that the matter can be given consideration on appeal during the normal judicial processes." A letter signed by a G. D. Marshall, who is the legal officer of the U. S. S. YORKTOWN according to information furnished by counsel for petitioner on oral argument, notified petitioner's counsel that his motion had been denied. The text of this letter is set out below:

"Your Motion to hold execution of sentence in the case of AA John B. WALKER, USN, B15 81 47, has been considered and denied. Accordingly, AA John B. WALKER has been transferred to Naval Station Correctional Center, Norfolk to commence his four months Confinement at Hard Labor. The four months forfeiture of $90.00 per month and the reduction in rate to E–1, cannot be ordered executed until the Convening Authority acts on the record. The Bad Conduct Discharge cannot be executed until all review has been completed."

Although Article 57(d) of the Uniform Code of Military Justice, 10 USC § 857, now authorizes applications for deferment of sentence to confinement, the motion filed in this instance was not such an application, but instead it argued that beginning service of sentence during appellate review constituted execution of the sentence, in violation of Article 71(c), Code, supra, 10 USC § 871.

After his motion to the Commanding Officer of the YORKTOWN was denied, the petitioner filed a petition for writ of habeas corpus with this Court. In that petition he alleged that his incarceration was in violation of Article 71(c) of the Code, which provides:

"No sentence which includes, unsuspended, a dishonorable or bad-conduct discharge, or confinement for one year or more, may be executed until affirmed by a Court of Military Review and, in cases reviewed by it, the Court of Military Appeals."

This Court denied the petition "without prejudice to renewal upon a proper factual basis for relief." The petitioner then filed an amended petition for writ of habeas corpus setting forth a copy of the original motion to the Commanding Officer of the YORKTOWN alleging that "[s]ubstantial legal questions were raised which merit the serious consideration of the reviewing officers and the appellate review board," and that he would be prejudiced if required to serve his sentence while such questions were under consideration. The Court ordered respondents to show cause why the relief sought should not be granted and the case was scheduled for oral argument.

This Court recently reaffirmed in Reed v Ohman, 19 USCMA 110, 41 CMR 110 (1969), that ▇▇▇▇ post-conviction restraint in the form of confinement is not necessarily execution of a court-martial's sentence and that such confinement may be necessary to the administration of justice. Reed, then, stands as a recent determination of the allegation in petitioner's amended petition that his incarceration during appellate review constitutes an execution of his sentence to confinement.

In his oral argument before the Court, counsel for petitioner asserted that during his confinement at the Naval Station Correctional Center, Camp Allen, Norfolk, Virginia, the petitioner was subjected to the same treatment as prisoners whose sentences have been ordered executed following appellate review, and that the petitioner is now confined at the U. S. Naval Disciplinary Command, Portsmouth, New Hampshire. In its reply to the petition, the Government furnished an affidavit from the Corrections Officer at the Naval Station, Norfolk, Virginia, that while Walker was

detained at that facility he was not allowed to work with the sentenced prisoners in the correctional center, and that because of his "being a disciplinary problem and an unmanageable individual," Walker was transferred to the Disciplinary Command at Portsmouth, New Hampshire, on November 8, 1969, where he will be retained pending completion of appellate review. Another affidavit, from the Commanding Officer of the U. S. Naval Disciplinary Command at Portsmouth, New Hampshire, attests that Walker is currently being held at Portsmouth ʌs an unsentenced prisoner.

This Court's opinion in United States v Bayhand, 6 USCMA 762, 21 CMR 84 (1956), held that if persons in confinement pending appellate review were required to perform the same work under the same conditions as persons whose sentences had been executed following appellate review it must be assumed that the unsentenced prisoners were being punished. The principal distinction between the confinement of persons whose sentences have been executed following completion of appellate review and those whose sentences have not been executed pending appellate review is that the latter may not be required to do the same work at the same time and place as the former. Another distinguishing characteristic is that adjudged prisoners (those whose convictions by court-martial are still undergoing appellate review) may not be subjected to conditions of confinement more rigorous than necessary to insure their presence. Article 13, Code, supra, 10 USC § 813; Levy v Dillon, 286 F Supp 593 (D Kansas) (1968). Although an accused whose conviction ▆▆▆▆▆■ is not final may not be treated as a sentenced prisoner, his transfer from one confinement facility to another does not violate the Uniform Code of Military Justice or the Manual for Courts-Martial, United States, 1969 (Revised edition). Reed v Ohman, supra.

We noted previously that counsel's motion to the convening authority was styled a "Motion to Hold Execution of Sentence" and that the legal officer's response was that the accused had been "transferred to Naval Station Correctional Center, Norfolk to commence his four months Confinement at Hard Labor."

The writer apparently believed the confinement part of the sentence could be put into effect by transfer to a confinement facility. Despite any possible misconception about what ▆▆▆▆▆■ constitutes execution of the sentence, this letter and its terminology would not determine whether the sentence to confinement had been executed; instead such a determination depends upon the conditions of confinement, specifically whether the accused was required to work with prisoners whose sentences to confinement have been executed following completion of appellate review, and whether the conditions of his confinement were more rigorous than necessary to assure his presence. Article 13, Code; Levy v Dillon, both supra.

Since nothing in the amended petition demonstrates that petitioner's sentence has been executed, ▆▆▆▆▆■ in violation of Article 71 (c) of the Code, or that he has been subjected to confinement more rigorous than the circumstances require to insure his presence, we must deny his petition.

We note, however, that Article 138 of the Uniform Code of Military Justice, 10 USC § 938, provides for consideration of ▆▆▆▆▆■ a complaint by a person in confinement following conviction and before the end of appellate review. If such a person believes the circumstances of his custody violate either Article 13 or Article 71 (c), he may apply for redress to his Commanding Officer. If the Commanding Officer refuses to correct a wrong any superior commissioned officer to whom the aggrieved person complains is required to forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom

the complaint is made. The officer exercising general court-martial jurisdiction must examine into the complaint and act to redress the wrong. Article 138 also provides that this officer shall send to the Secretary of his military department a statement of the complaint "with the proceedings had thereon."

If the accused is unsuccessful in securing relief under an Article 138 complaint, his counsel still has an opportunity to present to the Court of Military Review evidence that the circumstances of his confinement were in violation of the Code. In its review a Court of Military Review is limited to the entire record, including the transcript, the allied papers, and any appellate brief prepared pursuant to the terms of the Code. Article 38, Code, supra, 10 USC § 838, authorizes the defense counsel to prepare a brief to be forwarded "for attachment to the record" and to include "such matters as he feels should be considered in behalf of the accused on review." A brief of this type is a part of the record that the Court of Military Review may consider. United States v Fagnan, 12 USCMA 192, 30 CMR 192 (1961). If after considering such brief and other permissible evidence a Court of Military Review is persuaded that the conditions of confinement during appellate review are contrary to law, we believe that under the principle of United States v Nelson, 18 USCMA 177, 39 CMR 177 (1969), that court may take any such violation into account in its determination of an appropriate sentence.

Finally, in cases to be reviewed by this Court, we can review earlier asserted claims that conditions of incarceration and work were indistinguishable from those of sentenced prisoners. Because of these remedies and of the rule that except in extreme cases courts do not interfere with the conduct of a prison, with enforcement of its rules and regulations, or its discipline (Childs v Pegelow, 321 F2d 487 (CA 4th Cir) (1963), certiorari denied, 376 US 932, 11 L Ed 2d 652, 84 S Ct 702 (1964)),

extraordinary relief is not justifiable in the ordinary case of this type.

The amended petition for writ of habeas corpus is denied.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

My brothers deny the relief sought by the accused on the ground that he has not demonstrated that his sentence to confinement has been executed in violation of Article 71(c), Uniform Code of Military Justice, 10 USC § 871, or that he has been subjected to confinement more rigorous than the circumstances require to insure his presence during appellate review. Additionally, they note the availability to an accused of the remedies for redress provided by Article 138, Code, supra, 10 USC § 938, and through the normal appellate process, for any infringement of his rights, as a basis for their further holding that extraordinary relief is not justifiable in the ordinary case.

I cannot agree that this accused's sentence to confinement has not been executed. The record is to the contrary. On the day that sentence was imposed, the accused's attorney presented the following motion to the convening authority:

"Subj: Motion to hold execution of sentence in above case in abeyance pending Appellate Review.

"Comes now John B. Walker, by counsel, and moves that the sentence imposed upon him this 26th day of August 1969 be held in abeyance until such time that the proceedings may be reviewed. Substantial legal questions were raised which merit the serious consideration of the reviewing officers and the appellate review board. If sentence is commenced, Mr. Walker might be seriously prejudiced in that a major part of the sentence would be executed by the time that the matter can be given consideration on appeal during the normal judicial processes.

**251**

It is, therefore, respectfully requested that sentence imposed this date be held in abeyance pending appeal.

/s/ John B. Walker
by H. Kowalchick
H. Kowalchick, of counsel for John B. Walker."

The legal officer to the convening authority wrote in reply:

"Dear Mr. Kowalchick:

"Your Motion to hold execution of sentence in the case of AA John B. WALKER, USN, B15 81 47, has been considered and denied. Accordingly, AA John B. WALKER has been transferred to Naval Station Correctional Center, Norfolk *to commence his four months Confinement at Hard Labor.* The four months forfeiture of $90.00 per month and the reduction in rate to E-1, cannot be ordered executed until the Convening Authority acts on the record. The Bad Conduct Discharge cannot be executed until all review has been completed. [Emphasis supplied.]

Sincerely yours,
/s/ G. D. Marshall
G. D. MARSHALL."

No amount of rationalization as to Mr. Marshall's misconception about what constitutes execution of the sentence will suffice to change the fact that the accused's incarceration at Norfolk was intended, by those concerned,[1] as execution of the confinement portion of the sentence. While confinement, standing alone, is not *per se* execution of the sentence of the court-martial (Reed v Ohman, 19 USCMA 110, 41 CMR 110 (1969)), confinement of an accused "to commence his four months Confinement at Hard Labor," is in direct violation of the Code, when ordered prior to the completion of appellate review. Article 71(c), Code, supra. See also Reed v Ohman, supra; Article 13 Code, supra, 10 USC § 813. Cf. United States

v Nelson, 18 USCMA 177, 39 CMR 177 (1969).

The corrections officer at the Naval Station, Norfolk, did indeed later aver that, due to his adjudged status, the accused was not allowed to *work* with sentenced prisoners in the Correctional Center. This, however, as my brothers note, is not the only test for determining whether there has been a violation of the accused's status. An accused awaiting finality of appellate review may not be subjected to conditions of confinement more rigorous than necessary to insure his presence. Article 13, Code, and Reed v Ohman, both supra. What then of the accused's confinement at Norfolk in this case?

In two affidavits, dated November 28, 1969, by the same correctional officer at Norfolk, submitted by the Government in response to an oral request made at the hearing on this motion, the following appears:

"The Naval Station, Norfolk, Virginia has for many years attempted to obtain the necessary funds for replacement of the aged Correctional Center facilities. The Correctional Center is operating within World War II structures which have long outlived their usefulness. The prisoner berthing spaces consist of two (2) dormitories which house fifty-four prisoners each and a cell block which contains fifty (50) cells. The Correctional Center has been operating with maximum capacity prisoners on board for many months therefore berthing facilities have been fully utilized. The separation of sentenced and unsentenced prisoners for berthing within this Correctional Center is impossible. The separation of sentenced and unsentenced prisoners in other areas, i. e. messing, recreation, participation in educational programs, etc. *would be detrimental to the efficient operation*

---

[1] While the letter does not so state, the accused's attorney, in his brief, acknowledges that the convening authority personally denied his motion. The lawyer's motion was directed to the convening authority. Presumably, therefore, he also directed that the accused be sent to the Correctional Center at Norfolk.

of the facility, the correctional processes of rehabilitation and the morale and welfare of the prisoners."

"The element of separation of sentenced and unsentenced prisoners which was brought about as a result of the Court of Military Appeals ruling in the case of US vs NELSON, 18 USCMA 177, [39] CMR 177, has resulted in designation of particular working spaces for sentenced prisoners and others for unsentenced prisoners, all of whom have volunteered to work within the Correctional Center and participate in the full rehabilitative program. This assignment to specific work areas for prisoners based upon their status rather than their abilities, specialties and desires has had a definite detrimental affect [sic] upon the correctional processes of rehabilitation and the morale and welfare of the prisoners. It has also reduced the effectiveness and production within the work areas.

"Further separation of sentenced and unsentenced prisoners in other than the work areas can only result in additional adverse elements to the correctional processes and rehabilitation of the prisoners."

Since the accused was transferred to the Naval Disciplinary Command, Portsmouth, New Hampshire, on November 8, 1969 (he was initially confined at Norfolk on August 28, 1969), a letter was also obtained, at the request of Government counsel, from the Commanding Officer, Portsmouth, relative to the handling of prisoners at that facility. The letter outlines the complete program followed at Portsmouth. The accused, again, is not specifically mentioned. Of particular note, however, to our inquiry is the following sentence:

". . . In this connection, the only punitive aspect of the program here is the fact of confinement itself; all sentenced prisoners therefore are in essence treated as unsentenced prisoners."

It is at once apparent that, although the accused is not mentioned directly, the Correctional Center, Norfolk, differentiates between confinees *only* in the area of working spaces. All other matters affecting prisoners are the same. Apparently, prior to this Court's decision in United States v Nelson, supra, even this difference did not exist. *Nelson* had more far-reaching ramifications than I had supposed. It is quite likely that procedures at other confinement facilities are in accord with those at Norfolk. If they are, they certainly do not comport with the requirement that the conditions for confinement for one awaiting appellate review be no more rigorous than necessary to insure his presence. Reed v Ohman, supra.

In view of the above, I am impelled to the conclusion that this accused, when confined at Norfolk and at Portsmouth, was serving his sentence to confinement in violation of Article 71(c), Code, supra. I do not visualize how it can be contended otherwise. And, as feared by his attorney, the accused has now served his sentence to confinement and the appellate processes have not yet been completed. His time spent in confinement can never be restored to him. See North Carolina v Pearce, 395 US 711, 23 L Ed 2d 656, 86 S Ct 2072 (1969). Prejudice is apparent. United States v Nelson, supra.

Since the accused has now been released from confinement, the time of his sentence having expired, we cannot grant him the relief requested. We can, however, unsatisfactory as it may be, consider the matter when it reaches this Court by way of the normal appellate processes. The relief accorded in United States v Nelson, supra, seems appropriate.