UNITED STATES, Appellee,

v.

Cara R. SANCHEZ, Airman First Class,
U.S. Air Force, Appellant.

No. 99–0761.
Crim.App. No. 33117.

U.S. Court of Appeals for
the Armed Forces.

Argued March 1, 2000.

Decided Aug. 30, 2000.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., and GIERKE and EFFRON, JJ., joined. GIERKE, J., filed a concurring opinion. SULLIVAN, J., filed a dissenting opinion.

For Appellant: *Major Stephen P. Kelly* (argued); *Colonel Jeanne M. Rueth* (on brief); *Lieutenant Colonel Ray T. Blank, Jr.*

For Appellee: *Captain Christa S. Cothrel* (argued); *Colonel Anthony P. Dattilo* and *Lieutenant Colonel Ronald A. Rodgers* (on brief); *Major Jennifer R. Rider.*

Senior Judge COX delivered the opinion of the Court.

The sole issue before this court is whether appellant was subjected to cruel and unusual punishment in violation of her rights under the Eighth Amendment and Article 55 of the Uniform Code of Military Justice, 10 USC § 855, while confined at the Naval Consolidated Brig Miramar, San Diego. Specifically, we granted review of:

> WHETHER APPELLANT WAS SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT AND ARTICLE 55 OF THE UCMJ WHEN GUARDS AT THE MILITARY CONFINEMENT FACILITY REPEATEDLY SEXUALLY HARASSED HER.

The Court of Criminal Appeals affirmed the findings and the sentence in an unpublished opinion.

## FACTUAL BACKGROUND

In August of 1997, appellant loaned her car to her ex-husband to travel to California. Once he arrived, appellant told him that she planned to report the car as stolen. Appellant and a senior airman manufactured a cover story to the effect that the car had been stolen, and then filed the necessary reports and claims. The car was later found in California at the home of a family friend of appellant.

Subsequently, appellant was arrested on charges stemming from this incident. On December 4, 1997, a military judge sitting alone convicted appellant, pursuant to her pleas, of four larceny-related charges.[1] He sentenced her to be reduced to the grade of airman basic, 1 year of confinement, and a bad-conduct discharge. Consistent with her plea agreement, the convening authority approved the sentence but waived the automatic forfeitures for 6 months for the benefit of her dependent children.

During her confinement at the brig, from December 30, 1997, until June 9, 1998, it is undisputed that she was the victim of ongoing verbal sexual harassment.

According to appellant's various statements, it seems she told someone at the brig about some of the harassment, yet it continued. Later, she asked another supervisor to take her off the trash detail she had with one of the inmates who harassed her, but did not say why. From appellant's statements, it seems that she might have told several more individuals at the brig, but asked them not to do anything out of fear of retaliation. Finally, at her parole outbriefing in June of 1998, she told the commanding officer about the harassment, but once again asked that no action be taken until after she left.

Appellant then filed a formal complaint. In her complaint, appellant detailed at least ten separate incidents when military guards or other inmates said inappropriate sexual things to her, or asked her inappropriate sexual questions. However, according to appellant, the men never touched or otherwise harmed her. Based on her complaint, the

---

1. Appellant was charged with and found guilty of: (1) attempting to steal $10,000 from Allstate Insurance Company by filing a false insurance claim stating her car was stolen, when she knew it was not stolen, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880; (2) conspiring with another airman to steal $20,000 from Allstate Insurance Company by filing false insurance claims for car theft and personal property, in violation of Article 81, UCMJ, 10 USC § 881; (3) making false statements to Special Agents of the Air Force Office of Special Investigations to the effect that her car had been stolen, when she knew it had not been stolen, in violation of Article 107, UCMJ, 10 USC § 907; and (4) wrongfully obtaining a rental car valued at $439.73 from Allstate Insurance Company by pretending to that company that her car was stolen, in violation of Article 134, UCMJ, 10 USC § 934.

Navy conducted an internal investigation and determined that appellant had indeed been harassed while at the facility. The Navy then initiated disciplinary proceedings against the military staff involved.

Appellant now claims that this situation kept her in a constant state of humiliation, discomfort, fear, and pain (emotional), and that because of this treatment while confined, she was the victim of cruel and unusual punishment. She asks this court to "find a violation of the Eighth Amendment for sexual harassment and grant appropriate relief." Final Brief at 8.

We find the harassment appellant suffered, while indefensible, did not rise to the level of cruel and unusual punishment as contemplated by the Eighth Amendment and Article 55 of the UCMJ. We affirm the findings of the lower court.

## DISCUSSION

While appellant endured inexcusable behavior during her confinement, it did not rise to the level of cruel and unusual punishment as contemplated by the Eighth Amendment and Article 55 of the UCMJ. We conclude that verbal sexual harassment at the level appellant suffered is insufficient to establish conduct amounting to cruel and unusual punishment. Further, the record does not establish the requisite state of mind for an Eighth Amendment violation.

## CONDUCT AMOUNTING TO CRUEL AND UNUSUAL PUNISHMENT

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court said that the framers' intent behind the Eighth Amendment was to prevent barbaric and torturous forms of punishment. In more recent history, the standard for what constitutes cruel and unusual punishment has developed into more than just pure physical torture. Instead, the current standard is that the Eighth Amendment pro-

hibits "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' . . . or which 'involve the unnecessary and wanton infliction of pain[.]' " *Id.* at 102–03, 97 S.Ct. 285 (citations omitted).

In *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court defined two factors that are necessary for an Eighth Amendment claim to succeed regarding conditions of confinement. First, there is an objective component where an act or omission must result in the denial of necessities and is "objectively, 'sufficiently serious.' " *Id.* at 834, 114 S.Ct. 1970, quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The second component is subjective, testing for a culpable state of mind. "In prison conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*, quoting *Wilson, supra* at 302–03.[2]

We agree with the Court of Criminal Appeals, 1999 WL 305090, and the conclusions of the Second and Tenth Circuit Courts of Appeals that sexual harassment may, in some circumstances, rise to the level of cruel and unusual punishment. However, although the sexual harassment in this case was unacceptable, appellant has failed to demonstrate, "as an objective matter, that the alleged abuse or harassment caused 'pain.' " Unpub. op. at 5, quoting *Freitas v. Ault*, 109 F.3d 1335, 1339 (8th Cir.1997).

In the *Freitas* case, the Eighth Circuit determined that sexual harassment or abuse of an inmate by a guard sometimes might rise to the level of "wanton and unnecessary infliction of pain" and in those cases may therefore give rise to an Eighth Amendment claim. Still:

[t]o prevail on a constitutional claim of sexual harassment, an inmate must . . . prove, as an objective matter, that the alleged abuse or harassment caused "pain" and, as a subjective matter, that the officer

---

**2.** *Wilson* extended the deliberate indifference standard from medical necessity cases to prison conditions cases. Sexual harassment while in prison is a condition of confinement issue under Eighth Amendment analysis. *See, e.g., Freitas v.*

*Ault,* 109 F.3d 1335, 1338 (8th Cir.1997); *Thomas v. District of Columbia,* 887 F.Supp. 1 (D.D.C. 1995); *Boddie v. Schnieder,* 105 F.3d 857 (2d Cir.1997); *Adkins v. Rodriguez,* 59 F.3d 1034 (10th Cir.1995).

in question acted with a sufficiently culpable state of mind.

*Freitas, supra* at 1338, citing *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Although the typical Eighth Amendment violation is found where prisoners are denied adequate medical attention or food[3]—a denial of basic human necessities,[4]—Justice Blackman's separate opinion in *Hudson, supra* at 16, 112 S.Ct. 995, suggests that psychological pain might be actionable under the Eighth Amendment. Still, it seems that any such claim would have to be a well-established and clinically diagnosed anxiety or depression. *Id.* at 16–17, 112 S.Ct. 995. Appellant's "pain" does not meet this standard.

Appellant argues that she suffered "pain" consistent with Eighth Amendment cruel and unusual standards. This, she contends, is demonstrated by the fact that she cried about the situation to her counselor and because she suffered from great fear of the guards because of their position of control over her. Further, she maintains that the "barrage of harassment inflicted pain on her." Final Brief at 3. She does not allege and she has not presented evidence of physical harm or clinically documented psychological trauma.[5] Even under the most flexible "pain" standard, appellant's situation does not rise to the level of cruel and unusual punishment in the legal sense.

## STATE OF MIND

■ The culpable state of mind component is also not present in appellant's case. Here,

there is no evidence of a deliberate indifference to her fear and pain necessary to an Eighth Amendment violation.

Under the standard in *Farmer, supra,* the prison guards and officials must be consciously aware of the risk or danger to the inmate and choose to ignore it; they must have been aware of the harm or risk of harm caused appellant, and continued anyway. In the instant case, appellant did not tell the guards, much less their supervisors, that she was being offended and harassed by other inmates. Therefore, there was no knowledge and disregard of appellant's situation as a condition of her confinement, as required under the "deliberate indifference" standard. Without it, she could not have suffered cruel and unusual punishment under the Eighth Amendment.

Appellant argues that although she never said anything to the guards directly, because sexual harassment cases are so prevalent in today's society, they should have known the profound effect their actions would have on her.

The *Farmer* Court rejected a similar argument,[6] holding that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and *he must also draw the inference.*" 511 U.S. at 837, 114 S.Ct. 1970 (emphasis added). Similarly, here, we must reject appellant's claim and find that the prison guards and officials did not have the requisite culpable state of mind.

3. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981) (citing *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)).

4. See *Farmer, supra* at 832, 114 S.Ct. 1970, where the Court speaks to the necessity for humane prison conditions, and at 847, where it states that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."

5. In *Boddie, supra* at n. 2, where an inmate was actually touched and grabbed, still this was not enough to constitute a violation of his Eighth Amendment rights. In *Adkins, supra* at n. 2, where there were solely sexual verbal comments, there was also no violation found. That inmate argued that implicit to the verbal harassment was a threat tantamount to assault, i.e., "force." The court disagreed.

6. In that case, petitioner urged the Court to hold that "a prison official is deliberately indifferent if he 'knew facts which rendered an unreasonable risk obvious; under such circumstances, the defendant should have known of the risk and will be charged with such knowledge as a matter of law.'" *Farmer,* 511 U.S. at 837 n. 5, 114 S.Ct. 1970.

Appellant further contends that when she did notify officials at the confinement facility of the harassment, they did nothing to prevent its continuation, thereby "reflect[ing] they were deliberately indifferent to Appellant's rights." Final Brief at 4. It is unclear from appellant's posttrial statements and assertions whether, before filing a report with the commanding officer at out-processing, she reported the situation to the appropriate persons and who exactly those persons might have been.[7] However, what is clear is that when she reported it to a person of real authority, the commanding officer, he did not have the culpable state of mind. This is evidenced particularly by the fact that as soon as he became aware of the situation, he instituted a full investigation.

## CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is therefore affirmed.

GIERKE, Judge (concurring):

I agree with the majority's decision on the merits of the granted issue. I write separately to address the question of jurisdiction, which the Government asserts is "a matter of considerable debate." Answer to Final Brief at 3.

By deciding the merits of the issue, this Court has *sub silentio* asserted its jurisdiction. Unlike *Clinton v. Goldsmith*, 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999), this case does not involve our authority under the All Writs Act, nor does it involve the collateral consequences of a court-martial sentence. This case is before us on direct review of an issue whether the sentence is being executed in a manner that increases its severity to the extent that it violates the

Eighth Amendment and Article 55. Thus, in my view, this Court is well within its jurisdiction under Article 67(c), UCMJ, 10 USC § 867(c), to act "with respect to the findings and sentence as approved by the convening authority and as affirmed ... by the Court of Criminal Appeals."

SULLIVAN, Judge (dissenting):

## JURISDICTION

I disagree with the appellate court below that it had no jurisdiction to entertain appellant's claim for sentence relief based on her post-trial sexual harassment by her prison guards. *See generally Walker v. United States*, 19 USCMA 247, 251, 41 CMR 247, 251 (1970) (Court of Military Review may take violations of law concerning conditions of confinement during appellate review into account in its determination of an appropriate sentence); *see also United States v. Miller*, 46 MJ 248, 250 (1997). The Supreme Court's decision in *Clinton v. Goldsmith*, 526 U.S. 529, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999), does not render military appellate courts impotent in this regard. In my view, Article 55, UCMJ, makes unlawful post-trial punishment a matter of law related to "the review of specified sentences imposed by courts-martial" under Articles 66 and 67, UCMJ, 10 USC §§ 866 and 867. *Id.* at 534, 119 S.Ct. 1538; *see also* Article 71(c)(2), UCMJ, 10 USC § 871(c)(2) (execution of sentence).

Article 55, UCMJ, expressly authorizes more than review of sentences adjudged by a court-martial. It states:

§ 855. Art. 55. Cruel and unusual punishments prohibited

Punishment by flogging, or by branding, marking, or tattooing on the body, or *any other cruel or unusual punishment, may*

---

7. These facts are unclear based on the totality of her statements and pleadings to this Court. For example, regarding the first time (presumably) she told someone of the harassment, her statement reads that she "felt uncomfortable and reported this situation [with the prison guard] to my quarter supervisor Petty Officer McDonald and CDO Msgt Roman." Later in the same statement, appellant states:

"I've been harassed by male inmates since I've been here and my case manager and LCPO

have minimized the situations. So I knew if I came to them about a staff it might be handled the same way....I felt I had no access to the commander except through a voluntary and then everyone would know."

Appellant's other statements read side-by-side do not paint a clear picture because they are equally inconsistent.

*not be* adjudged by a court-martial or *inflicted upon any person subject to this chapter.* The use of irons, single or double, except for the purpose of safe custody, is prohibited.

(Emphasis added.) Sexual harassment is not a lawful punishment under our Code, nor was it adjudged as punishment by appellant's court-martial. The "infliction" of such punishment on a military prisoner by prison guards, over and above that adjudged by the court-martial, is unquestionably a matter of codal concern. *See Clinton v. Goldsmith, supra* at 536, 119 S.Ct. 1538 ("It would presumably be an entirely different matter if a military authority attempted to alter a judgment by revising a court-martial finding and sentence to increase the punishment, contrary to specific provisions of the UCMJ . . . .").

The federal district courts remain open for the military prisoners to present claims for injunctive, declaratory, or habeas relief based on unlawful post-trial confinement conditions. *See Walden v. Bartlett,* 840 F.2d 771, 775 (10th Cir.1988), and *Marrie v. Nickels,* 70 F.Supp.2d 1252, 1259–60 (D.Kan.1999). Claims for monetary damages, however, are barred by the *Feres* doctrine. *Id.* at 1261. Nevertheless, our unique military justice system permits convicted servicemembers to make claims on direct appeal for judicial sentence relief based on unlawful post-trial punishment. *Walker v. United States, supra.* Resort to this military legal remedy, prior to seeking relief in the federal district court, is not only authorized but appropriate. *See generally Schlesinger v. Councilman,* 420 U.S. 738, 758, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975) ("But implicit in the congressional scheme embodied in the Code is the view that the military court system generally is adequate to and responsibly will perform its assigned task. We think this congressional judgment must be respected and that it must be assumed that the military court system will vindicate servicemen's [or women's] constitutional rights.").

### REQUIRED PREJUDICE

I also disagree with the majority of this Court that "verbal sexual harassment at the level appellant suffered is insufficient to establish conduct amounting to cruel and unusual punishment" under the Eighth Amendment and Article 55, UCMJ. 53 MJ at 395. It opines that "clinically documented psychological trauma" such as "diagnosed anxiety or depression" must be shown and was neither alleged or proven in this case. *Id.* at 396. In my view, appellant has made a prima facie case of sufficient pain required by the Eighth Amendment and Article 55, UCMJ, and a hearing under *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967), is warranted on this issue if contested by the Government.

In this regard, I note that appellant's claims of sexual harassment were investigated by the Commanding Officer, Naval Consolidated Brig Miramar and found to be corroborated. *See* Appendix A and B. I see no reason at this stage of the proceedings to doubt her *unrebutted* assertions that she suffered pain as a result of this misconduct by her prison guards. *Cf. Freitas v. Ault,* 109 F.3d 1335, 1337 (8th Cir.1997) (factual dispute concerning existence of pain resolved in Government's favor). I also note that her allegations covered an extended period of time in the brig, and she particularly averred this misconduct placed her in a constant state of "humiliation," "discomfort," "fear," and "emotional" pain. In my view, she has alleged and proven legally cognizable pain, *i.e.,* pain beyond "routine discomfort [which] is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Nothing said by Justice Blackman in his separate opinion in *Hudson* justifies dismissing this claim at this point in time.

### INTENT TO PUNISH

I must also disagree with the majority's rejection of appellant's post-trial punishment claim because it "find[s] that the prison guards and officials did not have the requisite culpable state of mind." 53 MJ at 396–97. In particular, it asserts "[i]n the instant

case, appellant did not tell the guards, much less their supervisors, that she was being offended and harassed by other inmates." *Id.* at 396. It is on this basis that the majority concludes she has not shown that "the prison guards and officials [were] consciously aware of the risk or danger to the inmate and cho[ ]se to ignore it. . . ." *Id.* at 396; *see Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Appellant's complaint in this case was that she was sexually harassed *by her prison guards.* Moreover, the commanding officer of the brig found that these complaints were corroborated and acknowledged her sexual harassment at his facility. To factually find that these prison guards were not "deliberately indifferent" in these circumstances not only exceeds the powers of this Court, but it is counterintuitive. Article 67, UCMJ.

This is an unusual case where appellant's complaint of sexual harassment by prison guards was acknowledged by prison authorities and was not factually disputed by the Government. I am unwilling to reject a sentence reduction argument based on this acknowledged misconduct for the reasons touted by the majority. In addition, appellant has served her confinement. Accordingly, I would order a *DuBay* hearing which would permit the Government opportunity to factually dispute appellant's unlawful punishment claim and, if it does not, permit the military judge or Court of Criminal Appeals to fashion appropriate sentence relief with respect to the remainder of her sentence.

# APPENDIX A

**DEPARTMENT OF THE NAVY**
NAVAL CONSOLIDATED BRIG MIRAMAR
PO BOX 452135
SAN DIEGO, CA 92145-2135

IN REPLY REFER TO
5354
Ser 00A22
24 Jul 98

From: Commanding Officer, Naval Consolidated Brig Miramar
To:   AB Cara R. Sanchez, USAF, 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

Subj: INAPPROPRIATE VERBAL REMARKS OF A SEXUAL NATURE BY STAFF
      MEMBERS TO AND IN FRONT OF A FEMALE INMATE

Ref: (a) CNO WASHINGTON DC 1561911 Apr 98 (NAVADMIN 080/98)
     (b) OPNAVINST 5354.1D of 21 Jun 96
     (c) NAVCONBRIG Miramar ltr of 25 Jun 98

1. I would like to update you on the items addressed in my last letter to you dated 25 Jun 98. A two stage investigation has been completed and a number of remedial actions taken. Specifically:

   a. Petty Officers Davis and Bailey have been referred to Court Martial, and the USAF legal division is reviewing the investigation regarding SSGT Jenkins actions.

   b. Other members of the staff have received various levels of verbal and written counseling.

   c. In addition the Commanding Officer has personally briefed aspects of the case to all inmates in the facility. Separate training sessions and discussions have been held with all staff personnel.

2. I regret you were subjected to harassment while at this facility. I thank you for reporting the situation and allowing corrective measures to be taken. I encourage you to continue to assert yourself in matters such as these and hope this additional update will reassure you that this command and the Navy is serious about professional behavior regardless of the work setting. I will provide you with an additional update once the court martial proceedings are complete. As you are aware this may be somewhat of a lengthy process. If you have any questions or concerns please contact my administrative office.

S. E. WALTERS
acting

# APPENDIX B

**DEPARTMENT OF THE NAVY**
NAVAL CONSOLIDATED BRIG MIRAMAR
PO BOX 452135
SAN DIEGO, CA 92146-2135

IN REPLY REFER TO
5354
Ser 00/100
25 Jun 98

From: Commanding Officer, Naval Consolidated Brig Miramar
To:   AB Cara R. Sanchez, USAF, 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

Subj: INAPPROPRIATE VERBAL REMARKS OF A SEXUAL NATURE BY STAFF MEMBERS TO AND IN FRONT OF A FEMALE INMATE

Ref: (a) CNO WASHINGTON DC 1561911 Apr 98 (NAVADMIN 080/98)
     (b) OPNAVINST 5354.1D of 21 Jun 96

1. I wish to formally acknowledge your recent harassment complaint regarding the inappropriate verbal remarks of a sexual nature by staff members. I take your statements regarding inappropriate remarks by staff members very seriously and I am addressing them as described below.

2. The initial investigation is complete and corroborates your allegations. I am reviewing it and proceeding with appropriate action. I believe a minimum of three members will be the subject of Commanding Officers NJP or possibly Court Martial. Service members have been charged, advised of their rights and are consulting counsel. Additionally I am directing increased training for staff on the subject of sexual harassment and appropriate professional conduct as corrections officers.

3. I assure you that this matter will be handled promptly and professionally. I encourage you to continue to assert yourself in matters such as these and sincerely hope the information provided will help your feel confident that you were taken seriously and have protected others from similar harassment. I will provide you with additional details regarding action taken in separate correspondence.

S. E. WALTERS