IN THE CASE OF

UNITED STATES, Appellee

v.

Ann M. BRENNAN, Private First Class
U.S. Army, Appellant

No. 02-0801

Crim. App. No. 20000401

United States Court of Appeals for the Armed Forces

Argued April 29, 2003

Decided June 26, 2003

EFFRON, J., delivered the opinion of the Court, in which
BAKER and ERDMANN, JJ., joined. CRAWFORD, C.J., filed a
separate dissenting opinion. GIERKE, J., recused himself from
the case.

Counsel

For Appellant: Captain Terri J. Erisman (argued); Colonel
Robert D. Teetsel, Lieutenant Colonel E. Allen Chandler,
Jr., and Captain Imogene M. Jamison (on brief).

For Appellee: Captain Tami L. Dillahunt (argued); Lieutenant
Colonel Margaret B. Baines, Lieutenant Colonel Lauren B.
Leeker, and Major Mark L. Johnson (on brief).


Military Judge: Donna M. Wright

THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION.

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to her pleas, of possession, use, and distribution (three specifications) of marijuana and acquitted of possession with intent to distribute and distribution of mushrooms (psilocybin), in violation of Article 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 912a (2000). She was sentenced to a bad-conduct discharge, confinement for 15 months, total forfeitures, and reduction to the lowest enlisted grade. The pretrial agreement between Appellant and the convening authority limited the period of confinement to 12 months. The convening authority reduced the period of confinement to nine months and approved the balance of the sentence. The Court of Criminal Appeals affirmed in an unpublished opinion.

On Appellant's petition, we granted review of the following issues:

> I. WHETHER APPELLANT SUFFERED CRUEL AND UNUSUAL PUNISHMENT, IN VIOLATION OF THE EIGHTH AMENDMENT AND ARTICLE 55, UCMJ, 10 U.S.C. § 855 (2000), WHEN A GUARD AT THE MANNHEIM REGIONAL CONFINEMENT FACILITY ENGAGED IN CONDUCT INCOMPATIBLE "WITH THE EVOLVING STANDARDS OF DECENCY THAT MARK THE PROGRESS OF A MATURING SOCIETY" BY REPEATEDLY SEXUALLY ASSAULTING AND HARASSING HER.

2

> II. WHETHER THE STAFF JUDGE ADVOCATE'S
> POST-TRIAL RECOMMENDATION PREJUDICED
> APPELLANT BY IGNORING DEFENSE COUNSEL'S
> ASSERTION OF LEGAL ERROR.

For the reasons set forth below, we affirm the findings, but set aside the sentence and remand to the Court of Criminal Appeals.

## I. BACKGROUND

After the sentence to confinement was adjudged by the court-martial, Appellant was confined at the United States Army Confinement Facility, Europe, located in Mannheim, Germany. Defense counsel's clemency petition provided the following description of actions taken against Appellant by a petty officer first class (E-6) serving as a Guard Commander during her post-trial confinement:

> Ann Brennan was the victim of an indecent assault and sexual harassment by one of the male guards during her first two months of confinement. Ann Brennan was sent to Mannheim Confinement Facility (MCF) on 15 May 2000. In late May 2000, [a] Guard Commander, MCF, attempted to engage in sexual activity with Ann Brennan during his shift. [The Guard Commander] promised Ann Brennan special privileges in exchange for sex. Furthermore, he placed his hands on her buttocks, breasts and vaginal area on numerous occasions. He also exposed his penis to her and tried to force her to touch it with her hand.
>
> . . . CID titled [the Guard Commander] for indecently assaulting Ann Brennan, another inmate and one guard. The investigation is still outstanding . . . .

> . . . MAJ Steven Lynch, Commander of the
> MCF, stated that Ann Brennan was
> instrumental in identifying [the Guard
> Commander's] criminal behavior and aiding
> CID in the investigation.  He stated that
> her cooperation may very well lead to a
> court-martial conviction for [the Guard
> Commander].  It took a great deal of courage
> for Ann Brennan to come forward and report
> this conduct.  For her courage in reporting
> it and for suffering an attack at the hands
> of a guard, Ann Brennan deserves clemency.
> Additionally, MAJ Lynch stated that Ann
> Brennan has been a model inmate[.]

Although the staff judge advocate's post-trial recommendation discussed various aspects of Appellant's request for clemency, the staff judge advocate did not comment upon, or otherwise draw the convening authority's attention to, Appellant's specific request for clemency based upon the abusive conditions of her post-trial confinement.

In a subsequent statement filed before the Court of Criminal Appeals, Appellant stated:

> I was sexually attacked by [the Guard
> Commander] on many occasions.  His attacks
> were almost daily and range from verbal to
> physical.
>
> . . . .
>
> He . . . would come in and look at me when I
> was on the toilet.
>
> . . . .
>
> Every day I can remember that he was there,
> he at least propositioned me and told me
> what he wanted to do to me.  His

4

propositions were asking for sex in return
for special treatment and goodies, then
followed by a comment like "you'll give it
to me anyway or I will take it".  When he
told me what he wanted to do to me it was
very vulgar and perverted.  He said things
like "I'll F*** you till you can't scream
anymore, then I'll f*** you up your a** to
get you screaming again."

. . . .

He was physical many times.  He would do
things as little as slapping my butt when I
was on a treadmill or just walking by.  He
groped me wherever he could whenever he
could.  These events did not last long
because of my resistance, but they got
worse.  There was a specific event that was
the worst.  When he told me that he was
going to take a verbal statement about
something that happened to another inmate,
he took me into a counselor's room on the
weekend locked the door and trapped me in
the corner.  He rubbed his body up and down
my side while rubbing his hand all over me
and grabbing my private area between my
legs, he licked the side of my face and
tried to kiss me.  I struggled to get away
and finally was able to make a break for the
door.  While I was unlocking the door and
opening it, he stopped the door, grabbed my
hand and was pulling it toward him, saying
something to the effect of "just touch it",
I looked at him as I pulled my hand away and
noticed that he was pulling it toward his
penis that he had exposed out of his pants.
I then got the door open enough to run out
and back to my cell.

## II. CRUEL AND UNUSUAL PUNISHMENT

The Eighth Amendment to the Constitution prohibits the

infliction of "cruel and unusual punishment."  Article 55 states

5

that various specified punishments, as well as "any other cruel or unusual punishment, may not be adjudged by a court-martial or inflicted upon any person subject to [the UCMJ]."  We have observed that the Supreme Court's interpretation of the Eighth Amendment applies to a claim under Article 55 that confinement was administered in a cruel or unusual manner, subject to exceptions not pertinent to the present appeal.  United States v. White, 54 M.J. 469, 473 (C.A.A.F. 2001).

Under the Supreme Court's jurisprudence, misconduct by prison officials does not constitute cruel and unusual punishment unless it falls within the Eighth Amendment standards established by the Court.  See Farmer v. Brennan, 511 U.S. 825 (1994); Hudson v. McMillan, 503 U.S. 1 (1992); Estelle v. Gamble, 429 U.S. 97 (1976).  In Estelle, the Supreme Court held that the Eighth Amendment prohibits "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain."  429 U.S. at 102-03 (citations and internal quotation marks omitted).

In the context of a challenge to the conditions of confinement, the Court in Farmer observed that the Eighth Amendment "does not mandate comfortable prisons" but "neither does it permit inhumane ones."  511 U.S. at 832 (internal quotations omitted).  The Court identified two elements of an

6

Eighth Amendment claim concerning confinement conditions: (1) an objective test – whether there is a sufficiently serious act or omission that has produced a denial of necessities; and (2) a subjective test – whether the state of mind of the prison official demonstrates deliberate indifference to inmate health or safety. Id. at 834. Applying the Supreme Court's test, numerous federal courts, including this Court, have held that to sustain an Eighth Amendment violation, there must be a showing that the misconduct by prison officials produced injury accompanied by physical or psychological pain. See United States v. Erby, 54 M.J. 476, 478 (C.A.A.F. 2001); White, 54 M.J. at 474; United States v. Sanchez, 53 M.J. 393, 395-96 (C.A.A.F. 2000).

The Court in Hudson emphasized that the proof required to establish the unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." 503 U.S. at 5 (citing Whitley v. Albers, 475 U.S. 312 (1986)). The Court added:

> What is necessary to show sufficient harm
> for purposes of the Cruel and Unusual
> Punishments Clause depends upon the claim at
> issue, for two reasons. First, "[t]he
> general requirement that an Eighth Amendment
> claimant allege and prove the unnecessary
> and wanton infliction of pain should . . .
> be applied with due regard for differences
> in the kind of conduct against which an
> Eighth Amendment objection is lodged."
> Whitley, [475 U.S.], at 320. Second, the

7

> Eighth Amendment's prohibition of cruel and
> unusual punishments "draw[s] its meaning
> from the evolving standards of decency that
> mark the progress of a maturing society,"
> and so admits of few absolute limitations.
> Rhodes v. Chapman, 452 U.S. 337, 346
> (1981)(quoting Trop v. Dulles, 356 U.S. 86,
> 101 (1958)(plurality opinion)).

Id. at 8.


## III. DISCUSSION

The Government, in the course of this appeal, has not contested Appellant's statement and has characterized the Guard Commander's conduct as "deplorable." The Government contends, however, that Appellant has failed to show that the Guard Commander's actions violated the Eighth Amendment because Appellant has not shown that she suffered physical or psychological pain. As a general matter, verbal harassment, even when accompanied by physical contact, is insufficient without evidence of physical or psychological injury to prove that the misconduct constitutes an Eighth Amendment violation. See, e.g., Sanchez, 53 M.J. at 394-96; Boddie v. Schneider, 105 F.3d 857 (2d Cir. 1997). The present case, however, involves more than occasional unwelcome advances and incidental contact. Virtually every day over a two-month period, the Guard Commander abused his position as a prison official to mistreat Appellant, a prisoner subject to his command and control. At one point,

8

using graphic language, he brutally threatened her with anal sodomy.  On another occasion, he isolated her in a locked room, trapped her in a corner, and physically assaulted her.  This case involves a Guard Commander whose raw exercise of power over a prisoner transformed her lawful period of confinement into a different form of punishment by imposing repeated physical and verbal abuse over a two-month period.  Under these circumstances, expert testimony is not needed to demonstrate that the harm inflicted upon Appellant was sufficiently injurious to establish that she was subjected to punishment in violation of Article 55 by the Guard Commander.

The Government also contends that the evidence does not demonstrate that the confinement facility official in question acted with a sufficiently culpable state of mind.  In the present case, the Guard Commander engaged in persistent sexual harassment, threatened to forcibly sodomize Appellant, and indecently assaulted her.  His culpability is clearly established by his conduct, which is wholly unrelated to any legitimate penological or disciplinary purpose in a confinement facility.

The Government further argues that the pertinent mental state is that of the supervisors, who acted promptly on Appellant's complaints, thereby disproving any claim of deliberate indifference.  This case, however, involves a Guard

Commander who exploited his considerable discretionary authority to abuse Appellant over an extended period of time.  Regardless of the impact of the chain of command's reaction on the civil liability, if any, of supervisory officials, see Hudson, 503 U.S. at 12, White, 54 M.J. at 472, the response of supervisors does not preclude a finding that the Guard Commander violated Appellant's Eighth Amendment rights.  See, e.g., Barney v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998); Carrigan v. Delaware, 957 F. Supp. 1376 (D. Del. 1997).  In that regard, we note that if the Guard Commander knowingly had tolerated mistreatment of Appellant in the same manner by an inmate, he would have violated Appellant's Eighth Amendment protection against cruel and unusual punishment.  See Smith v. Chief Executive Officer, No. 00 C.V. 2521, 2001 U.S. Dist. LEXIS 13887, at *16-17 (S.D.N.Y. Sep. 7, 2001)(citing Farmer, 511 U.S. at 834).  Just as Article 55 does not permit a Guard Commander to knowingly tolerate abuse of a prisoner by another inmate, Article 55 does not permit a Guard Commander to inflict the same abuse on the inmate.

Finally, the Government contends that even if Appellant suffered cruel and unusual punishment, the problem was adequately addressed because the convening authority reduced her confinement from the 12 month period, as required by the pretrial agreement, to nine months.  The record, however, does

not demonstrate that the convening authority's action was undertaken to provide corrective action for the mistreatment of Appellant during confinement.  Defense counsel's request for clemency identified seven separate grounds for clemency, only one of which involved the abusive conditions of her confinement. The staff judge advocate's recommendation to the convening authority discussed various aspects of the defense request for clemency, but contained no reference to the conditions of post-trial confinement.  Under these circumstances, it would be inappropriate to conclude that the convening authority took corrective action to remedy Appellant's mistreatment in post-trial confinement.

With respect to Issue I, we conclude that Appellant was subjected to illegal post-trial punishment in violation of Article 55.  Issue II -- which asks whether the staff judge advocate's recommendation should have expressly addressed this legal error -- is moot in view of our holding on Issue I.

Because the case in its present posture involves correction of a legal error rather than the provision of clemency, corrective action may be taken by the Court of Criminal Appeals. The Court of Criminal Appeals has discretion either to take corrective action with respect to the Article 55 violation, or remand the case for such action by a convening authority.

IV. DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed as to findings and set aside as to sentence. The record is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for further proceedings consistent with this opinion.

CRAWFORD, Chief Judge (dissenting):

There is a significant difference between punishment inflicted by a prison official, and independent criminal acts committed by one rogue prison guard.  Appellant was a victim of the latter.  The offending guard in this case –– 1st Class Petty Officer (E-6) –– committed a criminal act of his own volition, which the prison's supervising official, a commissioned officer (0-4), handled appropriately.  Upon learning of the guard's misconduct through Appellant's complaint, the supervising official immediately initiated a criminal investigation, during which the Criminal Investigation Command (CID) titled the guard for indecently assaulting Appellant and at least several others.  This prompt and reasonable response on the part of the Major Lynch should be the focus of this Court's analysis, and not the independent criminal actions of one rogue prison guard.  It is on these grounds that I respectfully dissent.

"Generally, this Court looks to federal case law interpreting the Eighth Amendment to decide claims of an Article 55 violation."  United States v. Smith, 56 M.J. 290, 292 (C.A.A.F. 2002)(citing United States v. Avila, 53 M.J. 99, 101 (C.A.A.F. 2000)).  Accordingly, I consider Appellant's "claims of an Eighth Amendment violation and Article 55 violation together."  Id.

The Supreme Court has been clear that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'The infliction of punishment is a deliberate act intended to chastise or deter.'" Wilson v. Seiter, 501 U.S. 294, 300 (1991)(quoting Duckworth v. Franzen, 780 F.2d 645, 652 (7th Cir. 1985)). Accordingly, "[t]he thread common to all [Eighth Amendment prison cases] is that 'punishment' has been deliberately administered for a penal or disciplinary purpose." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1032 (2d Cir. 1973)).

The record does not in any way suggest that the guard sexually harassed Appellant "for a penal or disciplinary purpose." On the contrary, Appellant's affidavit suggests that the guard attempted to manipulate Appellant in an effort to satisfy his own sexual desires. While no doubt intolerable, the guard's actions were not "punishment" for Eighth Amendment purposes; they were independent criminal acts. Thus, my analysis focuses on the responsive actions of the prison's supervising official, and not the independent criminal acts of one rogue guard.[1]

---

[1] Moreover, the ultimate outcome of the CID investigation is not apparent from the record. There is certainly no indication in the record that the guard eventually received punishment -- either administratively or through a court-martial -- for his alleged acts. In the absence of evidence to this effect, we cannot assume the veracity of Appellant's affidavit, and must accept the

United States v. Brennan, No. 02-0801/AR

The question of cruel and unusual punishment under the Eighth Amendment "is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" Farmer, 511 U.S. at 843 (quoting Helling v. McKinney, 509 U.S. 25, 35 (1993)). Thus, to succeed in an Eighth Amendment claim, a prisoner must establish not only the seriousness of the offending acts -- by demonstrating exposure to a substantial risk of serious damage -- but also the offender's culpable mental state of deliberate indifference.[2] Id. at 835; see also Hope v. Pelzer, 536 U.S. 730, 737-38 (2002) (reiterating that in evaluating an Eighth Amendment claim courts must ascertain whether the officials involved acted with deliberate indifference); Wilson, 501 U.S. at 297 (noting that a prisoner advancing an Eighth Amendment claim must at minimum allege deliberate indifference to his serious medical needs); Estelle v. Gamble, 429 U.S. 97, 104 (1976)(concluding that deliberate indifference to serious medical needs of prisoners constitutes

---

possibility that the acts described in the affidavit may not have occurred. For this reason, focusing on the established responsive acts of the super-vising official, rather than the alleged acts of the guard, is even more appropriate.

[2] Although I employ the deliberate indifference standard in my analysis in accordance with federal precedent, it is worth noting that the standard has been academically criticized as overly stringent. See, e.g., Michael Cameron Friedman, Special Project: Cruel and Unusual Punishment in the Provision of Prison Medical Care: Challenging the Deliberate Indifference Standard, 45 Vand. L. Rev. 921 (1992)(arguing that the intent component of the deliberate indifference standard should be eliminated).

the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment).

An official acts with deliberate indifference only if "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837 (emphasis added). For that reason, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. at 844 (emphasis added). In short, deliberate indifference requires, first, knowledge of a serious risk posed to inmate health or safety, and, second, failure to respond reasonably to that risk.

In evaluating the reasonableness of a response, we bear in mind that officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979)(citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 128 (1977); Procunier v. Martinez, 416 U.S. 396, 404-05 (1974); Cruz v. Beto, 405 U.S. 319, 321 (1972)). This is because "maintaining security and order and operating the institution in a manageable fashion" are considerations "'peculiarly within the province and professional

4

expertise of corrections officials'."  Id. at 540-41 n.23

(quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)).

Appellant filed a sworn statement with the commander of her

confinement facility, describing the abusive conduct of one

rogue guard.  This statement prompted him to initiate an

official criminal investigation, during which the CID

interviewed Appellant, as well as other female inmates and

prison guards.  These interviews identified both current and

former inmates, as well as a female prison guard, who had been

indecently assaulted and/or sexually harassed by the rogue

guard.  In addition to describing the acts allegedly committed

by him and acknowledging other potential victims, the CID's

initial report requested a name check on the guard and indicated

that the investigation would continue.  In short, once the

supervising prison official knew of the risk posed by the guard,

he responded reasonably to it, by launching a thorough criminal

investigation closely linked to Appellant and the specific

allegations in her sworn statement.  See Jackson v. Everett, 140

F.3d 1149, 1152-53 (8th Cir. 1998)(finding official's

investigation of inmate's allegations a response sufficiently

reasonable to obviate deliberate indifference).

In sum, the guard allegedly engaged in independent criminal

acts that threatened inmate health and safety.  Upon learning of

these acts, the supervising prison official responded in a

manner aimed to examine and eliminate the threat.  Given the clear absence of deliberate indifference on the part of the supervising official, I respectfully dissent from the lead opinion.