# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————

**No. ACM 39857 (f rev)**

————————

**UNITED STATES**
*Appellee*

**v.**

**Michael J. STEINERT**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————

Appeal from the United States Air Force Trial Judiciary

*Upon Further Review*

Decided 29 November 2022

————————

*Military Judge:* Matthew D. Talcott (arraignment); Jefferson B. Brown; Dayle D. Percle (remand).

*Sentence:* Sentence adjudged on 10 October 2019 by GCM convened at Goodfellow Air Force Base, Texas. Sentence entered by military judge on 1 November 2019 and reentered on 15 November 2021: Bad-conduct discharge, confinement for 2 years, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Major Amanda E. Dermady, USAF; Major Kasey W. Hawkins, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Cortland T. Bobczynski, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Senior Judge KEY delivered the opinion of the court, in which Judge ANNEXSTAD and Judge GRUEN joined.

————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————

KEY, Senior Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement, of one specification of failure to follow a lawful order and five specifications of assault consummated by battery in violation of Articles 92 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 928.[1] The convening authority withdrew and dismissed three additional specifications of assault consummated by a battery in violation of Article 128, UCMJ, after Appellant had been arraigned, but before he entered his pleas. Once the military judge announced Appellant's sentence, the convening authority dismissed a specification of attempted sexual assault along with five specifications of sexual assault in violation of Articles 80 and 120, UCMJ, 10 U.S.C. §§ 880, 920, as required by the pretrial agreement. The specifications of which Appellant was convicted, as well as those that were dismissed, all pertain to offenses he committed in 2017 and 2018. The military judge sentenced Appellant to a bad-conduct discharge, confinement for two years, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority took no action on either the findings or the sentence.

Appellant's case is before us for a second time. When this case was originally presented to us, Appellant raised five issues. One of those issues entailed Appellant's assertion that the convening authority erred by not taking action on his sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860, *Manual for Courts-Martial, United States* (2016 ed.). We remanded his case to the Chief Trial Judge, Air Force Trial Judiciary, for corrective action. *See United States v. Steinert*, No. ACM 39857, 2021 CCA LEXIS 401, at *7–9 (A.F. Ct. Crim. App. 10 Aug. 2021) (unpub. op.). The convening authority subsequently approved Appellant's sentence, resulting in a revised entry of judgment (EoJ). Now that this error has been corrected, we turn to the remaining four issues raised by Appellant: (1) whether the EoJ should be revised; (2) whether he is entitled to relief because he was not permitted to rebut matters raised in the victim's submission to the convening authority; (3) whether he is entitled to relief due to the conditions of his post-trial confinement; and (4) whether his trial defense counsel were ineffective during sentencing proceedings.[2] We have carefully

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise noted, all other references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant personally raises issue (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

considered issue (4) and find it does not require discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and the sentence.

## I. BACKGROUND

Appellant's offenses stem from his abusive relationship with his wife, Ms. SS, whom Appellant was charged with physically assaulting on multiple occasions during the first half of 2017. Appellant was also convicted of violating no-contact orders on divers occasions in November 2018 by contacting Ms. SS despite being ordered not to do so. The particulars of Appellant's offenses are not pertinent to the issues he raises on appeal; facts relevant to each section are set out below.

## II. DISCUSSION

### A. Errors in the EoJ

Appellant asserts the EoJ in his case contains various errors and asks this court to set aside his punitive discharge as a remedy, as well as order the publication of a corrected EoJ. Appellant has alleged the following with respect to the EoJ:

(1) It describes how four specifications were amended after arraignment but before entry of pleas, as opposed to simply setting out the specifications as they appeared once the amendments had been made;

(2) It omits Appellant's social security number;

(3) It includes the victim's full name in two places, despite using her initials in all other instances in the EoJ; and

(4) It fails to state that two charges and nine specifications were withdrawn and dismissed *with prejudice*.

In its answer, the Government does not take any particular position on the questions of whether or not Appellant's allegations are actually true or amount to legal error. Instead, the Government asks us to modify the EoJ to correct any errors which might exist.

### 1. Law

We review claims of improper post-trial processing de novo as a question of law. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

"A pretrial agreement in the military justice system establishes a constitutional contract between the accused and the convening authority." *United States v. Smead*, 68 M.J. 44, 59 (C.A.A.F. 2009) (citing *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006)). "In a criminal context, the [G]overnment is bound to keep its constitutional promises." *Lundy*, 63 M.J. at 301.

In the performance of our duties and responsibilities, we may modify the judgment of a court-martial. Rule for Courts-Martial (R.C.M.) 1111(c)(2).

### 2. Analysis

#### a. Specifications Amended After Arraignment

With respect to Appellant's first contention, four specifications were amended pursuant to his pretrial agreement (for example, substituting the word "hand" for the originally charged word "fist"). The EoJ includes a chart outlining the outcome of Appellant's court-martial which includes four headings: "Charges;" "Arraigned Offenses;" "Pleas;" and "Findings." Synopses of the charges appear under the "Arraigned Offenses" heading along with explanations of modifications made to the charges after arraignment. For example, one specification is summarized, in relevant part, as Appellant striking Ms. SS on her arm and stomach with his fist. The next sentence reads: "Amended after arraignment to delete the word 'fist' to substitute the word 'hand.'" Appellant argues the summary for this offense in the EoJ "should only include the amended language," but he points to no authority for this proposition, nor does he advance any argument for why he believes this to be true.[3] Considering the EoJ heading plainly reads "Arraigned Offenses," Appellant's contention that only summaries of the as-modified offenses should be included—without reference to what modifications were made after Appellant was arraigned—would be both incorrect and misleading. As written, the EoJ captures both the offenses upon which Appellant was arraigned and the modified offenses to which Appellant pleaded guilty and was convicted of. Appellant's claimed error on this point is without merit.

#### b. Appellant's Social Security Number and Victim's Full Name

The EoJ in the record of trial filed with this court contains Appellant's social security number, so Appellant has failed to establish any error on this point.[4] Even if Appellant received an EoJ without his social security number on it, he has failed to identify any rule or procedure that has been violated,

---

[3] The Government, meanwhile, seems to conclude that the issue is that the synopses do not include the words, "amended *by the convening authority*" (emphasis added), but offers no explanation why inclusion of this information may be required.

[4] The original EoJ in the record of trial filed with this court also included Appellant's social security number.

much less how he has suffered any prejudice. Appellant's contention is without merit.

Appellant is correct that the EoJ includes the victim's full name in two places, despite using her initials in all other instances. While such an error certainly undermines the main rationale for using initials in the first place— that is, to protect the privacy of crime victims—Appellant has asserted no prejudice, and we see none. Thus, we grant Appellant no relief for this error.

### c. Dismissal With Prejudice

Pursuant to Appellant's pretrial agreement, the convening authority dismissed various specifications with prejudice—three were dismissed prior to Appellant entering his pleas and six were dismissed after the military judge announced Appellant's sentence, but before the court-martial adjourned. In the "Pleas" column of the EoJ, the three specifications dismissed pre-plea are captured as: "Withdrawn and dismissed before entry of pleas." The other six have annotations in the "Findings" column reading, "Withdrawn after acceptance of pleas and dismissed after sentence."[5] During Appellant's court-martial, the military judge confirmed all nine specifications were dismissed with prejudice.

Appellant asserts the military judge erred by summarizing the resolution of these specifications as having been "dismissed," as opposed to being "dismissed with prejudice." Appellant does *not* allege the convening authority failed to fulfill her promises in the pretrial agreement. Indeed, the record of trial reflects the specifications were actually dismissed with prejudice.[6]

Appellant further alleges he has been prejudiced by the wording on the EoJ. His theory is that anyone who reviews the EoJ "would receive an inaccurate reflection" of the disposition of those charges and the fact "with prejudice" was omitted "may have been part of the reason why [Appellant's] parole in the state of Texas was denied." In support of this contention, Appellant submitted to this court a heavily redacted letter from the probation office in the United States District Court for the Western District of Texas addressed to "Prisoner Management" at the Naval Consolidated Brig on Joint Base Charleston, South Carolina, where Appellant was confined at the time.[7]

Before we address the contents of this letter, we first assess whether we can consider it. The United States Court of Appeals for the Armed Forces

---

[5] The entries for these six specifications also indicate Appellant pleaded not guilty to the offenses.

[6] Pen-and-ink changes to the charge sheet also reflect the specifications were dismissed with prejudice.

[7] The line above "Prisoner Management" is redacted.

(CAAF) has clarified that, except in certain limited circumstances, our court's review under Article 66, UCMJ, 10 U.S.C. § 866, is limited to "the entire record," which generally does not include matters submitted directly to a Court of Criminal Appeals during appellate review. *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020). We may, however, consider such matters when necessary to resolve issues raised by materials in the record. *Id*. The CAAF has described this concept as authorizing the Courts of Criminal Appeals "to supplement the record to decide any issues that are raised, but not fully resolved, by evidence in the record." *United States v. Willman*, 81 M.J. 355, 358 (C.A.A.F. 2021), *cert. denied,* __ U.S. __, 142 S. Ct. 2811 (2022).

The Government has taken the position that we may not consider the probation office's letter pursuant to *Jessie*, because Appellant's parole was not raised by materials in the record. We disagree with the Government under the facts presented here. Whatever merit Appellant's substantive complaint may have, it relates to an issue raised in the record, namely whether Appellant has suffered any prejudice as a result of an EoJ error. Appellant has submitted the letter from the probation office in an effort to demonstrate prejudice, and we therefore conclude we may appropriately consider it as bearing on a matter raised—but not fully resolved—by the record.

We are unconvinced the letter Appellant submitted establishes he was prejudiced. The first half of the letter has been completely redacted save the introductory language: "We have investigated the relocation plan submitted for inmate [Appellant] and report the following:"—leaving us unable to understand the context of the entire letter. After the redacted portion, the letter indicates Appellant "has numerous allegations of sexually deviant and/or criminal sexual behaviors that have not been addressed through treatment or conditions set forth by the parole board for future evaluation or treatment." The letter then states the probation office denied "the relocation plan" due to Appellant's lack of ties to the area "and lack of conditions allowing for sex offender evaluation and/or treatment," and it concludes by offering Appellant the opportunity to submit "an alternative relocation/release plan."

Although the Government asked us not to consider this letter based upon *Jessie*, it submitted its own declaration in the event we disagreed. This declaration is from Ms. CL, the probation officer for the Western District of Texas. She asserts that she "handled" Appellant's case and explains that her office does not make parole decisions, but rather determines whether the office can assume responsibility of supervising offenders once they are granted parole. Ms. CL said the reason Appellant's request to be relocated to the area was denied was "because he has never lived here and has no circumstances tying him to this area," as Appellant "wanted to live with a friend he knew in tech school." Somewhat at odds with the letter Appellant received, Ms. CL claims

her office would have only considered Appellant's criminal history upon a determination that he "met the initial qualification for relocation," which Ms. CL says he did not. Ms. CL's declaration also references Appellant's arrest for some other sexual misconduct, which she both differentiates from his "more recent charged misconduct" and notes would require "a sex offender evaluation." With respect to whether Appellant's offenses were dismissed with or without prejudice, Ms. CL said that "does not make a difference" in her office's review.

Considering these documents together—even in light of the disconnect between Ms. CL's declaration suggesting Appellant's alleged offenses had not been considered and the letter from her office stating Appellant's relocation plan was denied due, in part, to those alleged offenses—we conclude Appellant has not demonstrated the omission of the words "without prejudice" contributed to his parole being denied. For one, the probation office was not responsible for determining whether or not to grant Appellant parole, but was instead deciding whether it would assume the responsibility of supervising Appellant once released. This fact alone renders Appellant's contention that his parole was denied as a result of the denial of his relocation plan highly speculative, especially in light of the fact we have no information about his parole eligibility at all, much less whether or why it was denied.

Second, the probation office's primary reason for denying Appellant's plan was apparently rooted in Appellant's lack of community ties to the area. Considering this reason was the first one cited in the probation office's denial recommendation, we suspect the redacted portion of the letter addresses Appellant's community ties to west Texas or, rather, his lack thereof. Thus, even if we assumed the denial of his relocation plan played a pivotal role in some parole decision, we cannot conclude the relocation plan was denied by virtue of the fact his EoJ omits the "with prejudice" language, as the decision was apparently driven by the fact he had no ties to the area he proposed moving to.

Third, we see no support for the proposition that the probation office would place any weight on whether his offenses were dismissed with or without prejudice in light of the fact Appellant's mere *arrest* for some earlier alleged offense triggered the requirement for a sex offender evaluation. As such, consideration was given to the fact Appellant was *charged* with sexual assault offenses—regardless of the ultimate disposition of those offenses—in assessing his relocation plan.

Lastly, the letter submitted by Appellant notes he had "numerous *allegations* of sexually deviant and/or criminal sexual behaviors." (Emphasis added). It does not state Appellant had numerous *convictions*. This indicates officials in Texas were concerned not just with offenses of which Appellant had been convicted, but also with ones he had been either accused of or charged with.

7

In light of the foregoing, Appellant has failed to demonstrate the omission of the words "with prejudice" has prejudiced him in any fashion. Without a showing of prejudice, we will not grant Appellant relief, even in the case of government error. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a). We will, however, employ our authority under R.C.M. 1111(c)(2) and modify the EoJ in our decretal paragraph.

## B. Matters Submitted by Ms. SS

On appeal, Appellant argues that he was not timely served a copy of the matters submitted by Ms. SS—the victim in this case—to the convening authority. He further asserts that after he was finally provided a copy of these matters, he submitted a written response to the convening authority, yet "there is no indication that the convening authority considered" his response. As a remedy, Appellant proposes that we reduce his sentence or order new post-trial processing. We agree the convening authority erred, but Appellant is entitled to no relief.

Under R.C.M. 1106A, once an accused has been convicted of an offense, any victim of that offense may submit matters to the convening authority for consideration in deciding what action, if any, to take on the court-martial's findings and sentence. R.C.M. 1106A(a). A victim must submit any such matters within ten days of the sentence being announced (although this period may be extended by no more than 20 days), and the convening authority is required to ensure the matters are provided to the accused "as soon as practicable." R.C.M. 1106A(c)(3), 1106A(e)(1). An accused, in turn, has five days after receiving a victim's matters to respond to them (a period which also may be extended). R.C.M. 1106(d)(3). The convening authority is required to consider any matters provided by either an accused or a victim under these rules prior to deciding whether to take action in a case. R.C.M. 1109(d)(3)(A). The convening authority "may not consider matters adverse to the accused that were not admitted at the court-martial . . . unless the accused is first notified and given an opportunity to rebut." R.C.M. 1109(d)(3)(C)(i).

Appellant was sentenced on 10 October 2019. During his court-martial, Ms. SS provided an unsworn written statement to the court under R.C.M. 1001 which was marked as Court Exhibit 1. On 18 October 2019, about a week after the court-martial concluded, Appellant submitted matters in clemency to the convening authority. Apparently unbeknownst to Appellant, however, Ms. SS also submitted matters to the convening authority during this same timeframe. On 28 October 2019, ten days after Appellant's submission, the convening authority signed a Decision on Action memorandum in which she stated she was taking no action on either the findings or the sentence in Appellant's case. She also noted in this memorandum that she had considered matters submitted by Appellant, as well as matters submitted by "the victim."

The military judge signed the EoJ on 1 November 2019, and he included the Decision on Action memorandum as an attachment.

More than two months after judgment was entered, on 8 January 2020, a government representative asked Appellant's trial defense counsel whether the Defense had received a copy of the post-trial matters Ms. SS submitted to the convening authority. Trial defense counsel responded that he had not. Appellant was provided those matters, and the convening authority permitted Appellant to respond to them. Appellant's trial defense counsel submitted a written rebuttal on 14 January 2020, in which Appellant took issue with factual assertions in Ms. SS's submission as well as argued that the convening authority's decision on action was "legally ineffective," insofar as it was made prior to Appellant's opportunity to respond to the matters submitted by Ms. SS. Finding Appellant's positions unpersuasive, the convening authority signed a memorandum dated 27 January 2020 in which she said she stood by her original decision to not take action. She also said she had concluded Appellant had not been prejudiced because Ms. SS's post-trial submission was "the identical victim impact statement" provided to the court-martial as Court Exhibit 1. The convening authority further maintained her prior Decision on Action memorandum was "properly executed." The 27 January 2020 memorandum, however, does not explain why—if the previous action decision had been proper despite the lack of service of Ms. SS's matters on Appellant—the convening provided Appellant a second opportunity to submit a response well beyond the time limits set out in R.C.M. 1006.

On appeal, the Government concedes Appellant received Ms. SS's matters late, but argues that Appellant cannot show any prejudice because the convening authority considered both sets of matters Appellant submitted and said she stood by her original decision.

We agree the convening authority erred in two ways: (1) by not providing Appellant a copy of Ms. SS's submission before deciding whether to take action on his case; and (2) by not specifically allowing Appellant to respond prior to making that decision. The applicable rules here are not complicated, and they essentially amount to giving a victim the right to provide information to the convening authority along with the accused's concomitant right to comment on that information—all in order to inform the convening authority's decision on whether or not to take action on the findings or sentence and, if so, what action to take. As R.C.M. 1109(d)(3)(C)(i) makes clear, the convening authority may not consider matters not admitted at the court-martial and adverse to an accused which the accused has not been allowed to rebut. Here, the convening authority's post-decision provision of Ms. SS's matters ran afoul of these rules insofar as Appellant's opportunity to respond occurred after the convening authority had already decided not to take action and after judgment had been

entered. What eliminates the prejudice to Appellant, however, is that Ms. SS's post-trial submission was the exact same document provided during the court-martial and included in the record of trial as Court Exhibit 1. Because there was nothing new in her post-trial submission and because the submission had been admitted at trial, the convening authority did not consider any matters which Appellant did not have the opportunity to rebut. That is, Appellant was able to address any matters in Court Exhibit 1 both at his court-martial and in his post-trial clemency submission. We therefore conclude that while the convening authority did not follow the procedures of R.C.M. 1106, R.C.M. 1106A, and R.C.M. 1109, she did not improperly consider any new matters. Similarly, without any new matters, Appellant had nothing new to respond to, so we see no prejudice to Appellant's rights.

We also find significant the fact the convening authority provided Appellant the post-decision opportunity to respond to Ms. SS's submission. Like the Government, we find it apparent from the convening authority's 27 January 2020 memorandum that she did, in fact, consider Appellant's post-decision response, and—as explained above—the convening authority said her decision was unchanged. We do not reach the question of whether the convening authority had the ability to change her decision after judgment was entered, nor do we consider whether the convening authority having already made an initial decision influenced her later ratification of that decision. Instead we note that had we found relief was warranted, the natural remedy would have been to set aside the decision on action, afford Appellant the opportunity to respond to Ms. SS's submission, and have the convening authority make a new decision on action. Because Appellant was given the opportunity to respond to the submission—and the convening authority considered that response in reviewing her prior decision—Appellant has already received the functional equivalent of the relief he requested in the form of new post-trial processing. Thus, Appellant has failed to demonstrate how he has been prejudiced.

## C. Post-trial Confinement Conditions

Appellant argues his post-trial confinement conditions—specifically with regards to his medical care—violated his rights under the Eighth Amendment to the United States Constitution[8] and Article 55, UCMJ, 10 U.S.C. § 855. Appellant also argues that, even in the absence of an Eighth Amendment or Article 55, UCMJ, violation, his confinement conditions rendered his sentence inappropriately severe, warranting relief under Article 66(d), UCMJ.

---

[8] U.S. CONST. amend. VIII.

### 1. Additional Background

Appellant was sentenced to be confined for two years on 10 October 2019, and he was processed that evening into the Schleicher County Jail (Schleicher County), where he remained incarcerated for two months until he was transferred to the Naval Consolidated Brig in Charleston on 10 December 2019. Appellant submitted matters in clemency to the convening authority on 18 October 2019 and then supplemented those matters on 14 January 2020. Neither submission contains any reference to Appellant's post-trial confinement conditions, so the following information is drawn almost exclusively from Appellant's submissions to this court, most of which are heavily redacted medical records along with a declaration from Appellant.

At the time of Appellant's court-martial, he was stationed in California, but his parent unit was at Goodfellow Air Force Base (AFB), Texas, where his court-martial was convened. In his declaration, Appellant asserts he began seeing a mental health provider in California in July 2018 and was receiving treatment there through his court-martial in October 2019. The medical records Appellant submitted start on 7 August 2019 and show that he was diagnosed with "insomnia, unspecified," "nightmare disorder," and "post-traumatic stress disorder, acute." On 14 August 2019, Appellant had the same diagnoses, with the addition of "major depressive disorder, single episode, unspecified;" and on this date, Appellant was prescribed gabapentin (an anti-anxiety medication) and trazodone (for depression and insomnia). Two weeks later, on 28 August 2019, the list of Appellant's diagnoses consisted of only two: "major depressive disorder, single episode, unspecified," and "nightmare disorder"— that is, post-traumatic stress disorder and insomnia were removed. This new diagnosis is repeated in a 4 September 2019 entry.

On 7 October 2019, Appellant flew from California to Texas for his court-martial. In his declaration, he explains he had prescription medications related to anxiety, depression, and insomnia, but he "was unsure if [he] could bring [his] prescription medication on the plane, so [he] left it in California." After being sentenced on 10 October 2019, Appellant underwent a confinement exam conducted by a Goodfellow AFB physician. The doctor found Appellant fit for confinement, but said Appellant was showing symptoms of possibly having chlamydia and that testing was recommended. The doctor further wrote on Appellant's confinement order that Appellant had a "[l]ongstanding complicated psychiatric history" and recommended a psychiatric evaluation and "continuation of current medications vs new regiment [sic]." The following day, notes from the exam were added to Appellant's medical records, specifying Appellant's diagnosis as "major depressive disorder, single episode, unspecified" and his prescriptions as including gabapentin and trazodone. The notes also have this notation: "Self[-]reported discontinuation of medications [one] week

prior to evaluation." Substantial portions of these notes are redacted and are therefore unavailable for our review.

What occurred upon Appellant's arrival at Schleicher County is somewhat in dispute, although it is apparent Appellant was not provided any prescription medications. Appellant claims in his declaration that he made "numerous requests" to Schleicher County personnel for his medication, but that they told him it "was a military issue;" he also says he made "numerous requests" to schedule a medical appointment at Goodfellow AFB to address his medical concerns. "After over one month," Appellant says he had an appointment at the base where he "received a shot," but was not given his prescription medications due to his impending transfer to Charleston.

In response, the Government submitted a declaration from Mr. JE, the Schleicher County jail administrator, who wrote that, on 21 October 2019, Appellant told him he "may have a sexually transmitted disease, and [that Appellant] believed he needed medication." Mr. JE says Appellant also told him "that he had a psychological condition and requested a new regiment [sic] for his psychological medications." Upon learning this, Mr. JE says he "immediately contact[ed]" his "primary contact" for Appellant based upon Appellant's military status.[9] This contact told Mr. JE that Appellant had received antibiotics prior to arriving at Schleicher County to address his chlamydia and promised to "get back to" Mr. JE about a psychological evaluation and any required medications. Nothing in Mr. JE's declaration indicates that either the contact or Mr. JE ever followed up on this discussion. Mr. JE asserts Appellant never made any other requests for medical attention or prescription medications and that Appellant was taken to Goodfellow AFB on 9 December 2019—the day before he was transferred to Charleston—for a "medical visit." Mr. JE's declaration makes no reference to any other medical issues involving Appellant.

Appellant's medical records demonstrate Appellant was seeking his prescription medications while in confinement, as the records include correspondence showing Appellant's California-based provider contacted the Goodfellow AFB mental health clinic around 12 November 2019, telling clinic personnel that Appellant wanted to receive his medications. On 18 November 2019, the base legal office called the mental health clinic trying to obtain an appointment for Appellant, and a 22 November 2019 entry in Appellant's records indicates the clinic was working to set up a video "telepsych" appointment for Appellant. Appellant's records include a questionnaire seemingly filled out by Appellant for an appointment on 27 November 2019. Although the vast majority of the questionnaire has been redacted, the portion that asked Appellant to "briefly

---

[9] We are unable to determine if this primary contact was affiliated with Goodfellow AFB or some other entity.

describe the problems or concerns that brought [him] here today" contains the following answer: "Major Depressive Disorder. Anxiety disorder. Lack of medical care by AF. Nightmares poss[ibly] related to PTSD. Other health and benefits concerns." The form asks what three things Appellant sought from treatment, and he wrote "medical care [and] treatment" and "diagnosis;" the third item is redacted. The provider's notes from the appointment are nearly entirely redacted, although they do indicate Appellant's "chief complaint" was "need medications;" that his diagnosis was "major depressive disorder, single episode, moderate;" and that Appellant did not pose any elevated suicide risk, although "lack of medications" was one factor which would increase his risk of suicide.

A few days after this appointment, on 1 December 2019, a note from the mental health flight commander indicates Appellant was scheduled for a psychiatric appointment in mid-December 2019, but the commander had learned Appellant was about to be transferred to Charleston. The commander wrote, "[P]lease work together to ensure [patient] gets his medications (primary goal) prior to his transfer OR that he has a safe transition and plan to get medications upon his arrival at Charleston AFB. Thank you!" A message the following day indicates a doctor had been identified who was "willing to put in a bridge prescription . . . as long as [Appellant] is able to come into the Charleston clinic." Apparently this bridge prescription did not materialize, as Appellant's final encounter with the Goodfellow AFB clinic was on 9 December 2019 for an evaluation pursuant to his transfer to Charleston. Almost completely redacted, the notes for that visit include diagnoses for depression, nightmares, insomnia, and post-traumatic stress disorder along with an annotation noting Appellant asked about restarting his medications and the provider said they discussed how Appellant could "inquire at his next location." Following more than an entire page of blacked-out text, the notes read: "Restarting medications is not ideal because there is no way to monitor him when he leaves here."

Once at the Naval Consolidated Brig, Appellant was prescribed an anti-depressant on 11 December 2019, then trazodone five days later. In his declaration, Appellant maintains that because he did not receive his prescription medications, he had "bad depression and suicidal ideations," "had an extremely difficult time sleeping," "suffered from night terrors from [his] PTSD," "had extreme pain from [his] engorged lymph node," and that his "anxiety was through the roof" while he was at Schleicher County.

Appellant concedes he never filed a complaint under Article 138, UCMJ, 10 U.S.C. § 938, but says this was due to him not knowing about either Article 138, UCMJ, or the requirement to file such a complaint. There is nothing in the materials submitted by Appellant indicating he availed himself of any

grievance process at Schleicher County, although Mr. JE's declaration does not state whether or not the facility had any such process in place.[10]

**2. Law**

We review de novo whether an appellant's post-trial confinement conditions violate the Eighth Amendment or Article 55, UCMJ. *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007) (citing *United States v. White*, 54 M.J. 469, 471 (C.A.A.F. 2001)). Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply "the [United States] Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, except in circumstances where . . . legislative intent to provide greater protections under [Article 55]" is apparent. *United States v. Avila*, 53 M.J. 99, 101 (C.A.A.F. 2000) (citation omitted). "[T]he Eighth Amendment prohibits two types of punishments: (1) those 'incompatible with the evolving standards of decency that mark the progress of a maturing society' or (2) those 'which involve the unnecessary and wanton infliction of pain.'" *United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)). As the Supreme Court has explained, "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

A violation of the Eighth Amendment is shown by demonstrating:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to [an appellant]'s health and safety; and (3) that [an appellant] "has exhausted the prisoner-grievance system . . . and that he has petitioned for relief under Article 138, UCMJ . . . ."

*Lovett*, 63 M.J. at 215 (first omission in original) (footnotes omitted) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)).

"[A] prisoner must seek administrative relief prior to invoking judicial intervention" with respect to concerns about post-trial confinement conditions. *Wise*, 64 M.J. at 471 (alteration in original) (quoting *White*, 54 M.J. at 472). "This requirement 'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id.* (alterations in original) (quoting *Miller*, 46 M.J. at 250); *see also United States v. McPherson*, 73 M.J. 393, 397 (C.A.A.F. 2014). "Absent

---

[10] Mr. JE notes in his declaration that the Schleicher County jail is small and only housed between four and six inmates in its general population while Appellant was there.

some unusual or egregious circumstance," an appellant must both exhaust the grievance system at the confinement facility as well as petition for relief under Article 138, UCMJ. *Wise*, 64 M.J. at 469 (quoting *White*, 54 M.J. at 472).

Under Article 66(d), UCMJ, we have broad authority and the mandate to approve only so much of the sentence as we find appropriate in law and fact and may, therefore, grant sentence relief, without finding a violation of the Eighth Amendment or Article 55, UCMJ. *United States v. Gay*, 74 M.J. 736, 742 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016); *see United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002). Unlike claims raised under Article 55, UCMJ, or the Eighth Amendment, we may not consider matters outside the record for a sentence-appropriateness review under Article 66, UCMJ, unless those matters amplify information already raised in the record. *Willman*, 81 M.J. at 359; *Jessie*, 79 M.J. at 441–42.

### 3. Analysis

Appellant's primary complaint is that he was unable to receive his prescribed medication when he was incarcerated, a situation which has not infrequently been presented to us in other cases.[11] The "[d]enial of adequate medical attention" may arise to the level of an Eighth Amendment or Article 55, UCMJ, violation. *White*, 54 M.J. at 474 (citing *United States v. Sanchez*, 53 M.J. 393, 396 (C.A.A.F. 2000)). The standard is "reasonable" medical care rather than "perfect" or "optimal" care. *Id.* at 475 (citation omitted). Although Appellant elected not to bring his prescription medication with him to Texas—where his court-martial was going to take place—and despite the fact that at least one medical provider noted in Appellant's records that he had stopped taking his medications a week before his trial, Appellant has demonstrated that he had active prescriptions for medications for his diagnosed anxiety, insomnia, and depression. There is also no dispute Appellant was not provided either his prescribed gabapentin or trazodone while he was confined at Schleicher County at the behest of Air Force officials. Although the jail is near Goodfellow AFB—a base which had a functioning mental health clinic at the time of Appellant's incarceration—Appellant did not receive his medication until he was transferred to Charleston. This was true despite the recommendation of the military

---

[11] *See, e.g.*, *United States v. Lopez*, No. ACM S32597 (f rev), 2021 CCA LEXIS 349 (A.F. Ct. Crim. App. 9 Jul. 2021) (unpub. op.); *United States v. Walker*, No. ACM 39745 (f rev), 2021 CCA LEXIS 290 (A.F. Ct. Crim. App. 23 Jun. 2021) (unpub. op.); *United States v. Monroe*, No. ACM S32547, 2020 CCA LEXIS 108 (A.F. Ct. Crim. App. 10 Apr. 2020) (unpub. op.); *United States v. Woods*, No. ACM 39403, 2019 CCA LEXIS 309 (A.F. Ct. Crim. App. 26 Jul. 2019) (unpub. op.); *United States v. McPhatter*, No. ACM 39324, 2019 CCA LEXIS 262 (A.F. Ct. Crim. App. 18 Jun. 2019) (unpub. op.); *United States v. Zegarrundo*, No. ACM S32430 (f rev), 2019 CCA LEXIS 250 (A.F. Ct. Crim. App. 13 Jun. 2019) (unpub. op.).

doctor performing Appellant's confinement evaluation and the intervention of Appellant's California-based mental health provider, personnel at the Goodfellow AFB legal office, and the Goodfellow AFB mental health flight commander. Once at the Naval Consolidated Brig, Appellant was placed on an anti-depressant regimen the following day and trazodone five days later; he has raised no complaints about his treatment at this military confinement facility.

We have previously recognized that major depressive disorder is a serious medical condition, and there is no need to depart from that conclusion here.[12] Appellant identified various mental health symptoms which he says worsened without his medication, and we see only minimal evidence to contradict his claims. Appellant asked the Schleicher County jail administrator, his provider in California, and Goodfellow AFB mental health clinic personnel all for help in obtaining his medications—a strong indication Appellant felt that he needed the drugs to alleviate symptoms he was experiencing. We do note one mental health provider indicated on 27 November 2019 that Appellant was not at an elevated risk of suicide, yet that provider added, "[f]actors likely to increase risk [of suicide] are lack of medications," suggesting this provider felt Appellant's medications were warranted to care for Appellant's mental health. Even the mental health clinic's flight commander described obtaining Appellant's prescriptions as the "primary goal." Nonetheless, Appellant was not given his medications for the two months he was housed at Schleicher County, despite the awareness of jail personnel, mental health providers, and the base legal office. We therefore conclude Appellant has satisfied the first prong of *Lovett* by demonstrating "an objectively, sufficiently serious act or omission resulting in the denial of necessities." 63 M.J. at 215.

The second *Lovett* prong calls upon us to determine whether the jail officials showed a deliberate indifference to Appellant's health and safety. *Id.* "Deliberate indifference" requires that the responsible official must be aware of an excessive risk to an inmate's health or safety and disregard that risk—"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In *Farmer*, the Supreme Court concluded this standard is not met when an official fails "to alleviate a significant risk that he should have perceived but did not," because the concept of punishment under the Eighth Amendment requires the prison official to both know of the health risk and then not take actions to resolve it. *Id.* at 838. Although likely a result of Mr. JE's failure to investigate Appellant's health complaints, we conclude Mr. JE was unaware of a substantial risk of harm to Appellant's health, and

---

[12] *See, e.g.*, *United States v. McPherson*, 72 M.J. 862, 873–74 (A.F. Ct. Crim. App. 2013).

Appellant has therefore fallen short of demonstrating a violation of either the Eighth Amendment or Article 55, UCMJ.

Mr. JE admits Appellant told him on 21 October 2019 that "he believed he needed medication," that "he had a psychological condition," and that he wanted "a new regiment [sic] for his psychological medications." This conversation occurred a week and a half after Appellant was booked into the county jail. While Mr. JE promptly reached out to his "primary contact" who said he or she would "get back to" Mr. JE, Mr. JE's efforts regarding this matter apparently stopped there. We see no indication Mr. JE's contact ever re-engaged with him or that Mr. JE followed up on the matter at any time in the following seven weeks Appellant remained at the jail. At odds with Appellant's claim that he made "numerous requests" of jail personnel for his prescriptions, Mr. JE claims Appellant never asked again for medical attention or prescription medication—a claim we are somewhat skeptical of, given Appellant's persistent efforts to obtain his medications through other means and the clear awareness of the matter on the part of Goodfellow AFB personnel.[13] Regardless of whether Appellant made "numerous requests" or only a single request to the staff at Schleicher County, Mr. JE was aware of Appellant's 21 October 2019 request for "a new regiment [sic] for his psychological medications," yet did nothing more than inconclusively reach out to a contact. While Mr. JE perceived Appellant's request important enough to "immediately" seek guidance from this contact, he let the matter languish thereafter. As a result, Mr. JE only generally knew Appellant had "a psychological condition" and was unaware of Appellant's specific diagnosis, his existing prescriptions, and what risk Appellant's health faced without the medications. Mr. JE's declaration does not indicate he knew more than that, and Appellant does not assert he communicated anything more to Schleicher County staff other than his requests for "my medication" and "to schedule an appointment with the medical facility at Goodfellow AFB to address [his] medical concerns."

Although major depressive disorder is a serious medical condition, Appellant must demonstrate prison officials knew the health risks he faced by virtue of having that diagnosis in order for us to find a violation of his rights. Appellant may have established negligence on the part of Schleicher County officials, but negligence is insufficient to establish a violation under the Eighth Amendment or Article 55, UCMJ, and Appellant's assertion of error therefore merits no relief.

---

[13] We have considered whether a post-trial evidentiary hearing is required to resolve this factual dispute, but we determine one is not needed under *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

Because Appellant has not shown a deliberate indifference to serious medical needs under the standard established by the Supreme Court, we need not assess whether or not Appellant exhausted the grievance system at Schleicher County or whether we should overlook the fact he did not make a complaint under Article 138, UCMJ. Further, the events at Schleicher County all occurred after Appellant was sentenced, and Appellant did not raise concerns about his confinement conditions in either of his clemency submissions, which means "the entire record" is silent on this matter. As a result, we cannot consider his complaints about confinement conditions raised solely on appeal under an Article 66, UCMJ, sentence-appropriateness theory. *Willman*, 81 M.J. at 359.

### III. CONCLUSION

The EoJ is modified as follows:

(1) The wording in the findings column for Charge I and its specification is modified to add the words "with prejudice" after the word "dismissed;"

(2) The wording in the findings column for Charge II and its five specifications is modified to add the words "with prejudice" after the word "dismissed;" and

(3) The wording in the plea column for Specifications 6, 7, and 8 of Charge III is modified to add the words "with prejudice" after the word "dismissed."

The findings and sentence as entered in the modified EoJ are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

18